# FIRST CHRISTIAN CHURCH OF GUTHRIE, KENTUCKY, Plaintiff-in-Error, v. W. R. MONEYPENNY, JR., et al., Defendants-in-Error.
## —439 S.W.2d 620.

Middle Section. June 28, 1968.

Certiorari Denied by Supreme Court January 6, 1969

Marks & Fleming, Clarksville, N. Everett Frey, Elkton, Ky., for plaintiff in error.

James C. Cunningham, Cunningham & Mitchell, Clarksville, for defendants in error.

# I

## THE CASE

SHRIVER, P.J.(M.S.). This case involves the probate in Montgomery County, Tennessee, of a holographic instrument dated July 6, 1965, in the handwriting of, and signed by Inez A. Moneypenny, a resident of Clearwater, Pinellas County, Florida, who died there on September 15, 1965.

The First Christian Church of Guthrie, Kentucky, a beneficiary under a prior will of Inez A. Moneypenny, dated April 29, 1959 and probated in Pinellas County, Florida as her last will and testament, resisted the right of the defendants-in-error to probate the holographic instrument hereinabove referred to, and the record was certified to the Circuit Court, Montgomery County, Tennessee for trial on the issue of devisavit vel non. The issue was decided in favor of the proponents of the holographic will and First Christian Church has appealed and assigned errors.

# II

## THE FACTS

Inez A. Moneypenny had been a resident of Florida for many years and she and her husband David R. Moneypenny went to the office of one Robert R. Tench, an attorney in Clearwater, Florida, and presented him a memorandum (Ex. 2 Dep. of Robert R. Tench) and requested him to draft wills for each of them. Pursuant to this request, Mr. Tench prepared what plaintiff-in-

error insists were mutual and reciprocal wills for Mr. and Mrs. Moneypenny, which wills were executed by them on April 29, 1959.

Thereafter on July 20, 1959, following the death of David R. Moneypenny, his will was probated in Pinellas County, Florida.

During the summer of 1965, after having suffered a stroke in February of that year, Mrs. Moneypenny mentioned to several friends that she had thought of making some changes in her will and it was suggested that she should get in touch with Mr. Tench if she desired to make such changes. And some of the witnesses, including Mrs. Gochnauer, testified about their conversations with Mrs. Moneypenny in this regard.

The holograph, dated July 6, 1965, which defendants-in-error seek to probate in Montgomery County, Tennessee as the last will and testament of Mrs. Moneypenny was found in a small metal box in her bedroom closet after her death where it was deposited along with certain other valuable papers belonging to her. In addition to savings account pass books, lock box keys and an envelope addressed to Mrs. Mary Moore Reasons to be opened by her after the death of Mrs. Moneypenny, there were papers affecting her husband's affairs and personal papers. This box was referred to by Mrs. Moneypenny in a letter to her son, W. R. Moneypenny, Jr., dated July 10, 1965. In said letter, after telling him of the box, she told him where to find the key to it and concluded, "I want you R., Jr. and Mary Moore to settle things and clear out the house, etc. when I am gone."

She also wrote a letter to Mrs. Mary Moore Reasons telling her of the box and of an envelope in same which was for Mrs. Reasons.

It is shown that both Mrs. Moneypenny and her husband were devoted church members and that they had a sentimental attachment for the First Christian Church of Guthrie, Kentucky which was built with the help of some of her ancestors.

After Mrs. Moneypenny's death, Mr. Robert Tench, attorney of Clearwater, Florida, advised that the holographic instrument in question here was not subject to probate in Florida since holographic wills are not recognized in that state. Thereafter, on September 28, 1965, Mr. Tench had the typewritten instrument dated April 29, 1959 which had been executed by Mrs. Moneypenny and had been drafted by him, probated in Pinellas County, Florida, as her last will and testament.

It is shown that the estate of Mrs. Moneypenny, with the exception of the real estate owned by her in Tennessee and in North Carolina, was administered and distributed in accordance with the will dated April 29, 1959 which was probated in Florida.

The record shows that Mrs. Moneypenny owned certain real estate in the First District of Montgomery County and that the holograph in question here disposes of that real estate.

On November 2, 1965, W. R. Moneypenny, Jr. filed a petition in the Montgomery County Court to probate the typewritten will of Inez A. Moneypenny and said will was accordingly probated.

Thereafter, on March 25, 1966, a petition was filed in Montgomery County by certain heirs of Inex Moneypenny averring that the above mentioned will of April 29, 1959 was revoked by the testator to the extent of the disposition of the real estate in Montgomery County by

the execution of a holographic will dated July 6, 1965, and asserting that the petitioners are claiming as beneficiaries under the subsequent holographic will. They pray that said will be admitted to probate as the last will and testament of Inez A. Moneypenny, superseding the typewritten will previously admitted to probate on November 2, 1965.

On March 25, 1966, an order was entered in the County Court of Montgomery County, authorizing the petitioner to take proof by interrogatories to show the due execution of the holographic will.

By petition filed August 30, 1966 in the County Court of Montgomery County, W. R. Moneypenny, Jr., ancillary executor of the typewritten will, joined in the request to vacate the order of probate of said typewritten will and requested that the holographic will of July 6, 1965 be admitted to probate.

On the same date, to wit, August 30, 1966, the First Christian Church of Guthrie, Kentucky filed an answer averring that the original typewritten will of Inez A. Moneypenny of April 29, 1959, previously admitted to probate in Montgomery County, should be allowed to stand and that the holographic will should not be admitted to probate.

By order of September 30, 1966, the County Court certified to the Circuit Court of Montgomery County, the contest with regard to the validity of the holographic will. Issue was joined and the matter was heard before the Honorable Sam E. Boaz, sitting for Judge Thomas Boyers, III, and in a written opinion the issues were discussed and determined as follows:

"The matter came on to be heard on March 13, 1967, before Sam E. Boaz, Judge of The Law and Equity Court for Montgomery County, Tennessee, sitting by interchange for Thomas Boyers, III, Judge of the Circuit Court for Montgomery County, without the intervention of a jury, and after oral testimony and depositions filed by the proponents and contestants the matter was taken under advisement pending the submission of briefs by counsel.

Briefs and reply briefs have been filed by counsel, the last reply brief having been filed July 3, 1967. The briefs evidence a great amount of research on this interesting and unusual question and have been of considerable help to the Court in arriving at a decision.

Taking the contestant's contentions seriatim, the following are the findings and opinion of the Court:

## I

It is the contestant's first contention that Inez A. Moneypenny did not execute the holographic will dated July 6, 1965, with testamentary intent.

The Court is of the opinion that Inez A. Moneypenny did execute the holographic will with testamentary intent. Reading the holographic will it clearly appears that she intended it as her final will. There is testimony indicating that she was a meticulous person, that she carefully considered her actions, that she knew she had a will and that she wanted to change her will. She carefully disposed of all of her property and named the persons to act as her personal representative. She wrote, "This is my latest will" and signed her name— and then advised how her signature could be checked. Had she intended the instrument as a mere guide in

preparing another will it is doubted that she would have felt any necessity of suggesting who might know her signature. She left the will among her valuable papers, which is not a requisite but does indicate that she considered it important. She then advised her relatives about the location of a tin or metal box in which she placed this will, although not mentioning the will.

## II

The contestant's next contention is that the holographic will executed July 6, 1965, cannot be probated in Montgomery County, Tennessee, because a previous typewritten will had already been admitted to probate in this county.

This contention cannot stand because the fact that the State of Florida does not recognize a holographic will does not bind the courts of Tennessee, where the real property in question is located. It appears to be possible, under the law to have more than one valid will, when property is located in more than one state.

## III

The contestant states under the third contention that if the declaration by proponents be deemed a contest of the typewritten will of Inez A. Moneypenny dated April 29, 1959, then the Montgomery County Courts do not have jurisdiction to determine the controversy.

This contention is without merit because this suit is not a contest of the typewritten will of Inez A. Moneypenny dated April 29, 1959. It would appear, rather, that the holographic will dated July 6, 1965, is contested by the contestant and, as seen above, the Court is of the

opinion that the State of Tennessee has the jurisdiction to determine the validity of a will purporting to dispose of realty located in this state.

## IV

Finally, it is contended by the contestant that Mr. and Mrs. Moneypenny executed mutual and reciprocal wills on April 29, 1959, and upon Mr. Moneypenny's death in 1959 and the probate of his will the 'mutual and reciprocal' will of Mrs. Moneypenny dated April 25, 1959, became irrevocable.

A will is ambulatory and can be changed at any time. If 'mutual and reciprocal' wills are executed then this characteristic of the wills is determined by contract between or among the testators. It would behoove the contestant, therefore, to bear the burden of proof in proving such contract. The contestant, in the Court's opinion, has failed to bear this burden. There is no proof that Mr. and Mrs. Moneypenny, when they executed wills on April 29, 1959, were doing so under any contract or agreement between them. The only evidence to that effect is inferred from the fact that the wills were reciprocal, were executed at the same time and place, before the same witnesses, and prepared by the same attorney. This may well indicate a mutual affection between this couple at that time but it is not, by itself, sufficient proof that a contract or agreement exisited between the parties.

In the Court's opinion, the holographic will executed by Mrs. Moneypenny on July 6, 1965, should be admitted to probate by the Montgomery County Court and that the order of the Montgomery County Court of November 2, 1965, admitting the certified copy of the typewritten will

executed by Mrs. Moneypenny on April 29, 1959, should be set aside and vacated.

The attorneys for the proponents should prepare an appropriate order to that effect.

This September 28, 1967.

/s/ Sam E. Boaz

Sam E. Boaz, Judge of the Law and Equity Court for Montgomery County sitting by interchange for the Honorable Thomas Boyers, III, Circuit Court Judge."

## III

## ASSIGNMENTS OF ERROR

There are five assignments which we will not set out seriatim.

Assignment No. I challenges the jurisdiction of the Circuit Court of Montgomery County to try the cause.

Assignment No. II asserts that the Court erred in holding that the First Christian Church of Guthrie, Kentucky was the contestant and had the burden of proof.

Assignment No. III is as follows:

"The Trial Court was in error in holding that the holographic instrument dated July 6, 1965 was executed animus testandi or with testamentary intent."

Assignment No. IV is as follows:

"The Trial Court was in error in holding 'It appears to be possible, under the law, to have more than one valid will, when property is located in more than one state.'"

Assignment No. V charged error in holding that the wills of David R. Moneypenny and Inez A. Moneypenny,

were not mutual and reciprocal so as to render the type-written will of Inez A. Moneypenny irrevocable after the death of her husband.

## IV·

## OUR CONCLUSIONS

We concur in the conclusions reached by the Trial Judge for the reasons set forth in his well considered opinion hereinabove copied in part.

We will discuss briefly some of the questions raised and the authorities relied on in connection with the contentions of the parties. As to the question of the jurisdiction of the Court raised by the first assignment of error, we think the assignment is not well taken because the proceedings herein were brought by the defendants-in-error pursuant to T.C.A. 32-511 through 32-516 providing for the original probate of foreign unprobated wills which dispose of real estate in Tennessee.

It should be pointed out that the defendants-in-error do not claim that the 1959 typewritten will of the deceased was improperly executed or improperly admitted to probate in Florida, or that, in the absence of a later will, was not subject to probate in Tennessee in accordance with the Statutes, Secs. 32-501 through 32-503, T.C.A., providing for the probate here of foreign wills. Since the testatrix executed a later will which revoked and superseded the previous will insofar as it affected her real estate in Tennessee, we think under the provisions of the foregoing statutes it was proper to probate the later will affecting the Tennessee real estate in the County where said real estate is located.

It appears that the holographic will was not probated in Florida since it does not meet the statutory requirements of that State. However, it does meet the statutory requirements of this State and is, for that reason, subject to probate here as a foreign unprobated will in accordance with the foregoing statute.

Section 32-511, T.C.A. expressly provides that the County Court of the County in this State in which the real estate or any part thereof is located has jurisdiction for the probate of a foreign unprobated will on application of any person interested under such a will. Sec. 32-512 through 32-514, T.C.A., provide a procedure for the probate of such a will and Section 32-515, provides that such probate shall have the same force and effect as to said real estate as the probate in this state of the wills of residents of Tennessee. It further provides that nothing in these sections is to prevent the proving of such wills as at common law and without probate. Furthermore, in Sec. 32-516, T.C.A., it is provided that such wills as to real estate shall be subject to contest in this State in the same manner as domestic wills.

The general rule as stated in 16 Am. Jur.2d, Sec. 54 under the title ''Conflict of Laws'', is that the power of the sovereign over property and over wills within its jurisdiction is unquestioned and that every State or sovereignty posseses the power of regulating the manner and terms upon which property, both real and personal, within its dominion, may be transmitted by will and of prescribing who shall and who shall not be capable of taking it. Furthermore, that the original probate of a will is also a matter of State regulations and depends entirely upon the local law. The text continues:

"In general, all questions arising under wills in regard to real property are referred to the lex rei sitae. That is, the testamentary disposition of real property is governed by the laws of its situs. A will may be effective as to immovable property in the state of its situs though without effect at the domicile of the testator."

In Section 56, Page 88, it is said that the formal validity of a will of real property depends upon the law of the state or country where the property is situated irrespective of the law of the domicil of the testator or the place where the will was executed. See also Martin v. Stovall, 103 Tenn. 1, 52 S.W. 296, 48 L.R.A. 130, and McGinnis v. Chambers, 156 Tenn. 404, 1 S.W.2d 1015, 82 A.L.R. 1492, and Pritchard on Wills, Vol. 1, Sec. 53, pages 64 and 65.

We have examined the statutes and authorities cited by counsel for plaintiff-in-error but we do not find that they affect the rule as hereinabove stated.

In Bearman v. Camatsos, 215 Tenn. 231, 385 S.W.2d 91, decided by Chief Justice Burnett, it was said in referring to Section 32-501, et seq., T.C.A.:

"But the application of this statute did not impair, in any degree, the jurisdiction of the County Court over the probate of an original will. Woodfin v. Union Planters Nat'l Bank & Trust Co., 174 Tenn. 367, 125 S.W.2d 487. It would have therefore been proper for the Probate Court of Shelby County to have granted an original probate of this Greek will had it complied with our statutes and legal requirements for a domestic will under Section 32-201, T.C.A."

We conclude that the Trial Judge was correct in holding that the Circuit Court of Montgomery County, Ten-

nessee had jurisdiction of the issue of devisavit vel non, hence, the first assignment is overruled.

The Second Assignment charges that the Trial Judge was in error in holding that the plaintiff-in-error was the contestant and had the burden of proof.

It appears that when the due execution of the will was proved then the Court allowed it to be introduced in evidence which was done in this case. It is pointed out in Phillips' Pritchard on Wills and Estates, Volume 1, Section 56, Page 69 that T.C.A. 32-506, derived from the Code of 1858, provides that any person interested may contest a foreign will offered for probate in Tennessee Courts in the same manner as though it had been originally presented for probate in said Court, and that this has been held to refer to unprobated wills from other jurisdictions and not to wills properly executed and probated according to the laws of another state.

Of course, in certain aspects of this suit the burden was on the proponents of the holographic will, but once it was established and the plaintiffs-in-error then sought to show that this was not the last will and testament of Mrs. Moneypenny, they had the burden as contestants.

It was pointed out by the Trial Judge that this is not a contest of the typewritten will of Inez A. Moneypenny of April 29, 1959, but is primarily a contest of the holographic will dated July 6, 1965.

To say the least, to whatever extent the burden was cast upon the First Christian Church of Guthrie, Kentucky in this proceeding, any erroneous application of the rule was, at most, harmless error because we find that the proponents of the holographic will showed by

a preponderance of the evidence that it was, in fact, the last will and testament of Mrs. Moneypenny as it affects the real estate in Tennessee belonging to her.

■ As to the Third Assignment charging error on the part of the Trial Judge for holding that the holographic instrument was executed with testamentary intent, we think the evidence clearly sustains this holding and, therefore, this assignment is overruled.

Assignment No. IV asserts that the Trial Judge was in error in holding that a decedent may have more than one valid will when property is located in more than one state.

In Thompson on Wills, Page 1916, Section 29, it is said that a testator may make separate wills respecting property in different jurisdictions. Thus, he may make two wills, one relating to property in the jurisdiction where he lives and afterwards one relating to property in a foreign country and the two wills will be deemed independent documents. The text states that, in each the testator should declare that it should apply only to the property in a certain jurisdiction.

It was probably with this in mind that the Trial Judge observed in passing that a decedent might have more than one valid will where property is located in more than one state.

On the other hand, in Sizer's Pritchard on Wills, Section 247, it is said that a man may make more than one testamentary paper all of which may constitute his will but it is a necessary consequence of the rule that a posterior will is a revocation of the former will so far as it is inconsistent with the first, and the last will affects the first only to the extent of the inconsistency

between the two. It is said that they may be taken together insofar as they are consistent and this is especially true where the later will contains no express revocation clause.

■ In any event, there is no contest here with respect to the effectiveness of the will probated in Florida except insofar as it affects the disposition of the real estate in Montgomery County, Tennessee. We concur in the conclusion of the Trial Judge that the holographic will, having been established and in which disposition of the Tennessee real estate is made, is controlling here, therefore, the Fourth Assignment is overruled.

■ By Assignment No. V it is contended that the Trial Judge erred in holding that the wills of David R. Moneypenny and Mrs. Inez A. Moneypenny of April 29, 1959 were not mutual and reciprocal so that Mrs. Moneypenny's will was irrevocable on the death of her husband.

We think the Trial Judge reached the right conclusion about this contention. It appears that the property in Montgomery County belonged to Mrs. Moneypenny in the first place and that the will of David R. Moneypenny simply provided that in the event he died first, all of this property remained hers, whereas, if she died first it was his will that this property go to the First Christian Church of Guthrie, Kentucky.

Mr. Moneypenny having died first the property remained that of Mrs. Moneypenny and was subject to disposition by her.

It results that the Fifth Assignment is overruled.

Having overruled all the assignments the judgment of the Trial Court is affirmed.

Puryear and Todd, JJ., concur.