**J. Michael ROGERS, as guardian for Tracee Rogers and Keely Rogers, Plaintiffs/Appellees,**

v.

**Ann RUSSELL, Kenneth Russell, and Sundee Russell, Defendants/Appellants,**

**Steven Russell, Defendant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 25, 1986.

Opinion Taxing Costs on Appeal Feb. 6, 1987.

George R. Fleming, Sr., Fleming, Fleming & Ross, Clarksville, for defendants/appellants.

William L. Harbison, Kenneth R. Jones, O'Hare, Sherrard & Roe, Nashville, for plaintiffs/appellees.

## OPINION

KOCH, Judge.

This appeal involves the probate of the will Sadie M. Warden executed on August 18, 1977. Her great grandchildren filed this will for probate following Mrs. Warden's death in 1981. Mrs. Warden's daughter and the daughter's children of her second marriage contested this will in part on the grounds of lack of testamentary capacity, undue influence, and the alleged "irrevocability" of the joint will Mrs. Warden had executed with her husband on April 1, 1968. These issues were certified to the Circuit Court for Houston County for a jury trial pursuant to Tenn.Code Ann. § 32–4–101 et seq. The jury found in favor of the 1977 will after a five day trial.

Mrs. Warden's daughter and her children have perfected this appeal. They do not take issue with the jury's decision concerning the validity of the manner in which Mrs. Warden's 1977 will was prepared and executed. They assert that they were entitled to a directed verdict on their claim that Mrs. Warden's 1977 will was invalid because the joint will she executed with her husband in 1968 became irrevocable upon her husband's death. They also challenge the trial court's jury instructions concerning this theory. We hold that Tenn.Code Ann. § 32–4–101 et seq. did not give the trial court the subject matter jurisdiction to consider the claim that Mrs. Warden's 1977 will was invalid because its execution allegedly violated her contract with her late husband to dispose of her estate in accordance with the terms of their joint will executed in 1968. Thus, we affirm the judgment certifying to the Chancery Court for Houston County that the 1977 will is Mrs. Warden's valid last will and testament.

I.

Sadie M. Warden and her husband, Wiley C. Warden resided in Houston County for many years. Mr. Warden ran a saw mill and later operated a store on Highway 49 and Yellow Creek Road. Mr. and Mrs. Warden owned a home on Yellow Creek Road across from their store as well as a farm known as the Cooksey farm. They were a frugal couple who managed their affairs carefully.

The Wardens' daughter, Ann, was born in 1920. She was their second and only surviving child. Ann married Harry Wells. Her first child, Randee, was born in 1944. Ann divorced her first husband a year after Randee was born and married her second husband, Kenneth Russell, in 1946. She had four children with her second husband.[1] Ann had a progressively severe alcohol problem from 1962 through 1969 brought on by the retardation of her oldest son and problems with the oldest daughter of her second marriage. Her condition

---

1. These children are: (1) Kenneth Russell who was born with severe mental retardation in 1948; (2) Rena Russell Trent who was born in 1950; (3) Steven Russell who was born in 1956; and (4) Sundee Russell who was born in 1961.

caused her parents a great deal of concern. She was able to bring her alcoholism under control in 1969.

Ann Warden Russell's first daughter, Randee, married Michael Rogers and gave birth to two children.[2] These children were Sadie Warden's only great grandchildren. Randee divorced her husband in 1976 and died in a freak accident in 1980.

Sadie and Wiley Warden executed a joint will on April 1, 1968. At that time, they owned some property as tenants by the entirety and other property in their individual name. By this will, both Sadie and Wiley left their entire estate to their survivor "in fee simple and absolutely." The will also provided for the creation of a trust in the event the survivor was adjudged legally incompetent. The trustee was specifically authorized to invade the corpus of this trust to care for the survivor.

The Wardens were also concerned about Ann's alcohol and health problems. Thus, their 1968 will also provided for the creation of a spendthrift trust for Ann upon the death or incompetency of the survivor. Upon Ann's death, the will provided that the residue of the Wardens' estate should be distributed to their grandchildren in equal shares when the youngest grandchild became of legal age. The bequest to any child deemed to be incompetent was limited to a $250 trust.

Wiley Warden died on August 6, 1968. The joint will he and his wife had executed four months earlier was duly probated on August 10, 1968. Sadie Warden was appointed executrix. She continued to operate the store on Yellow Creek Road until she sold it in 1970. She also remained in the home across the street from the store. She was able to live on her own and to take care of herself. She expected her daughter, grandchildren and great grandchildren to visit her, and they often did. Mrs. Warden enjoyed these visits and continued to take an active interest in her family and her church.

Mrs. Warden first thought about executing a new will as early as 1973. She finally executed a new will on August 18, 1977. The prospect of Mrs. Warden executing a new will caused great dissension among her daughter and grandchildren. Ann Russell and Rena Russell Trent thought that Randee Rogers would try to obtain the house on Yellow Creek Road that Mrs. Warden had promised to give to Rena. These fears ultimately proved to be unfounded. However, it is this dispute that ultimately caused Ann Russell and her children to contest Mrs. Warden's 1977 will.

Mrs. Warden's 1977 will specifically revoked all earlier wills and was significantly different from the joint will she and her husband had executed in 1968. In accordance with her promise, she left her house on Yellow Creek Road to Rena Russell Trent together with a $3,000 trust for its maintenance and upkeep. She also created a $13,200 trust to pay Ann Russell's medical expenses and a $2,000 trust for the maintenance and support of her retarded grandson, Kenneth Russell. She directed that the Cooksey farm be sold and that the proceeds be divided in six equal shares to be distributed among her daughter, her three granddaughters, and her two great granddaughters. The will's residuary clause directed that the remainder of her estate be divided equally among her three granddaughters and her two great granddaughters.

Ann Russell was appointed her mother's conservator in May, 1979 over her mother's objections. She began to actively manage her mother's affairs later that year and did so until her mother died in December, 1981. Mrs. Warden never attempted to set aside this conservatorship although she discussed it from time to time. The value of Sadie Warden's estate at the time of her death was estimated between $163,000 and $225,000.

Ann Russell petitioned the Chancery Court to appoint her as the administrator

2. These children are: (1) Tracee Rogers who was born in 1966 and (2) Keely Rogers who was born in 1970.

of her mother's estate as if she had died intestate. However, the father of Mrs. Warden's two great grandchildren had already filed a petition to probate her August 18, 1977 will in solemn form. Ann Russell and the children of her second marriage decided to contest the 1977 will and to offer the 1968 joint will for probate. The Chancellor entered a order pursuant to Tenn. Code Ann. § 32–4–101 *et seq.* certifying this matter to the Circuit Court for a trial to determine whether the August 18, 1977 document was Mrs. Warden's will. The jury determined that it was, and this appeal ensued.[3]

II.

*The Jurisdiction of the Circuit Court in a Tenn.Code Ann. § 32-4-101 Proceeding*

We must first consider whether the circuit court in a Tenn.Code Ann. § 32–4–101 proceeding to contest a will can hear and decide a contestant's claim based upon an alleged testamentary contract by the testator. Mrs. Warden's great grandchildren, as proponents of the 1977 will, challenged the ability of Ann Russell and her children to do so in their motion in limine filed prior to trial. However, the trial court overruled this motion and allowed this question to go to the jury.

The proponents of the 1977 will prevailed at trial and thus, understandably, have not directly raised this issue on appeal. The question is jurisdictional, however, and thus Tenn.R.App.P. 13(b) permits this Court to raise and decide this issue on our own motion. *Dalton v. Dean,* 22 Tenn. App. 56, 57, 117 S.W.2d 973, 974 (1938).

This case appears to be the first time a Tennessee court has addressed the question of whether contestant in a Tenn.Code Ann. § 32–4–101 *et seq.* proceeding should be permitted to assert its rights under an alleged contract not to dispose of one's

property contrary to the terms of a joint will.[4] We have determined that a will contest proceeding is not the proper forum to assert these contractual rights. Our decision is based upon a recognition of the purpose of a will contest proceeding as well as a recognition of the difference between the testamentary and contractual aspects of a joint will.

A joint will is nothing more than the separate wills of more than one person contained in the same instrument. *Richmond v. Richmond,* 195 Tenn. 704, 709–10, 227 S.W.2d 4, 6 (1950). While joint wills have been recognized as valid in Tennessee, *Popejoy v. Peters,* 173 Tenn. 484, 487, 121 S.W.2d 538, 539 (1938) and *Epperson v. White,* 156 Tenn. 155, 160, 299 S.W. 812, 813 (1927), their use has been discouraged because of the very problems made obvious by this case. See 1 H. Phillips & J. Robinson, *Pritchard on the Law of Wills and Administration of Estates* § 23, at 30 (4th ed. 1983) [hereinafter cited as "Pritchard"]; McMurray, *Joint and Mutual Wills in Tennessee: Validity, Contractual Limitations, and Effect on the Estate Tax Marital Deduction,* 42 Tenn.L.Rev. 305, 322 (1975); and 1 W. Bowe & D. Parker, *Page on the Law of Wills* § 11.1 at 553 (rev. 1960) [hereinafter cited as "Page"].

The most persistent problems stemming from the execution of a joint will relate to the contractual implications of the joint will itself. It has often been asserted that the mere execution of a joint will is tantamount to a contract between the testators to dispose of their estates only in accordance with the terms of the joint will and thus that the joint will becomes irrevocable upon the death of the first testator. It is also asserted that the execution of a joint will amounts to a contract by the testators not to revoke the will after the death of the last testator.

---

**3.** Steven Russell does not join his mother or brother and sisters in this appeal. He received nothing under the terms of his grandmother's 1977 will.

**4.** This practice appears to have been followed in *First Christian Church of Guthrie, Kentucky v. Moneypenny,* 59 Tenn.App. 229, 237, 439 S.W.2d 620, 623 (1968). However, this Court was not called upon to review the correctness of this procedure and thus did not approve it.

The Tennessee Supreme Court has stated that these propositions are legally erroneous because they ignore the difference between the will and the accompanying contract. *Ashley v. Volz*, 218 Tenn. 420, 425, 404 S.W.2d 239, 241 (1966) and *Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 637, 202 S.W.2d 178, 181 (1947). These holdings are in accord with the majority rule. One treatise points out:

> Frequently joint or mutual wills are made in pursuance of an agreement or compact not to revoke them. Here it is important to distinguish between the concept of wills and that of contracts. Our law has no separate concept of "will made in pursuance of contract;" we must treat the will part as a will and the contract part as a contract. Viewed in the aspect of a will, such instruments do not differ from other wills. In order to be effective, they must be admitted to probate and they are revocable although there has been an agreement not to revoke. The matter of the contractual aspect does not properly arise upon probate, but only when the agreement is sought to be established as a claim against the estate, or in a proceeding against the successors of the decedent.

T. Atkinson, *Handbook on the Law of Wills* § 49, at 224 (2d ed. 1953).

See also Page § 11.9, at 569.

While the Tennessee Supreme Court, in an opinion involving an independent action for specific performance of a contract not to revoke a mutual will, stated that the will/contract distinction was immaterial, *Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 637, 202 S.W.2d 178, 181 (1947), this observation has no application to the jurisdictional issue presently before this Court. This issue was not before the Tennessee Supreme Court at the time, and the statement is, at most, dictum to its main holding. We find that this distinction is quite material in this case.

■ A will contest proceeding in circuit court pursuant to Tenn.Code Ann. § 32–4–101 is governed by statute. *Petty v. Call*, 599 S.W.2d 791, 793 (Tenn.1980). It is an *in rem* proceeding analogous to the probate of a will in solemn form. *Bearman v. Camatsos*, 215 Tenn. 231, 238, 385 S.W.2d 91, 94–95 (1964) and *Durell v. Martin*, 172 Tenn. 97, 104, 110 S.W.2d 316, 318 (1937).

■ The purpose of the proceeding is to determine whether the instrument offered for probate is the will of the deceased. *Carver v. Anthony*, 35 Tenn.App. 306, 312–313, 245 S.W.2d 422, 425 (1951). It is intended to test the external validity of the will. Professor Atkinson has noted that

> a will may be contested upon the ground that it was not duly executed, which objection may include failure to observe the statutory formalities of execution, alterations or additions after execution, or forgery of the instrument. The contest may also be based upon the grounds that the testator lacked testamentary capacity, that undue influence or fraud were practiced upon him, or that he was laboring under a mistake of the sort which invalidates the instrument. A will may be contested upon the ground that it has been revoked. The objection that the instrument was not intended as a will and did not possess testamentary character can likewise be ground of contest.

T. Atkinson, *Handbook on the Law of Wills* § 98, at 517 (2d ed. 1953).

See also *Clark v. Hefley*, 34 Tenn.App. 389, 397, 238 S.W.2d 513, 516 (1950) (lack of testamentary capacity and undue influence).

Recognizing the purpose of a will contest proceeding, most courts addressing the question have held that a will contest does not involve a decedent's right to devise and bequeath property. Therefore, the trial court does not have jurisdiction to entertain a claim based upon an alleged contract to dispose of an estate in a particular manner or not to alter or revoke a will. *Kozyra v. Jackman*, 60 Mich.App. 7, 230 N.W.2d 284, 287–88 (1975); *Huston v. Cole*, 139 Tex. 150, 162 S.W.2d 404, 406 (1942); *Pullen v. Russ*, 209 S.W.2d 630, 634 (Tex.Civ.App. 1948); *Ellsworth v. Aldrich*, 295 S.W. 206, 209 (Tex.Civ.App. 1927); and *Chitwood v. Collins*, 122 W.Va. 267, 8 S.E.2d 830, 831–

32 (1940). See also 80 Am.Jur.2d *Wills* § 860 (1975); 3 W. Bowe & D. Parker, *Page on the Law of Wills* § 26.82, at 172 (rev. 1961); 95 C.J.S. *Wills* § 328b. (1957); and T. Atkinson, *Handbook on the Law of Wills* § 49, at 224 (2d ed. 1953).

■ The Tennessee Supreme Court has stressed that courts should decline to adopt procedures that have the effect of lengthening the time needed to probate a will. *Lillard v. Tolliver,* 154 Tenn. 304, 315, 285 S.W. 576, 579 (1926). We recognize and concur in this policy. However, it is not our prerogative to expand a court's statutory jurisdiction in the name of expediency. The issues in a will contest proceeding pursuant to Tenn.Code Ann. § 32–4–101 *et seq.* should not be obscured by issues that are not within the court's jurisdiction to decide. In accordance with the majority rule, a revoked will, even if it is a joint will, should be denied probate even though its revocation was a breach of contract, and the substituted will should be admitted to probate if it is otherwise proper.[5] Then the persons claiming that the decedent's execution of a subsequent will breached a contract may seek relief by filing a claim against the decedent's estate.

### III.

*The Contestants' Motion for a Directed Verdict*

Ann Russell and her children insist that they were entitled to a directed verdict on the invalidity of Mrs. Warden's 1977 will. Our review of the trial court's denial of their motion is based upon the same standards applied to Tenn.R.Civ.P. 50 motions in other civil cases. *Curry v. Bridges,* 45 Tenn.App. 395, 406, 325 S.W.2d 87, 91 (1959) and *Scott v. Atkins,* 44 Tenn.App. 353, 371, 314 S.W.2d 52, 60 (1957). After reviewing the evidence in a light most favorable to the motion's opponent, the trial court should grant a directed verdict only when one conclusion can be drawn from the evidence. *Arp v. Wolfe,* 49 Tenn.App. 294, 299, 354 S.W.2d 799, 801–02 (1956) and

*Cude v. Culberson,* 30 Tenn.App. 628, 637, 209 S.W.2d 506, 513 (1947). A directed verdict should not be granted if there is any substantial dispute concerning the material evidence or if there is any doubt concerning the ultimate conclusion of the case. *Curry v. Bridges,* 45 Tenn.App. 395, 406, 325 S.W.2d 87, 91 (1959).

■ The trial court's decision to deny Ann Russell's motion for directed verdict was proper for two reasons. First, the proof concerning Mrs. Warden's testamentary capacity and her freedom from undue influence presented a jury question. Second, Ann Russell's theory that the 1968 joint will was irrevocable is based upon two erroneous legal assumptions—that the existence of a joint will is, by itself, conclusive evidence of a contract and that a joint will becomes "irrevocable" when the first testator dies.

■ Contrary to Mrs. Russell's assertion, no court in this State has held that the execution of a joint will is, by itself, conclusive proof of the existence of a contract. While the courts have recognized that a joint will or mutual wills may satisfy the statute of frauds, *Harris v. Morgan,* 157 Tenn. 140, 154, 7 S.W.2d 53, 57 (1928), they have never adopted the *per se* rule relied upon by the contestants in this case. Instead, the courts have made clear that the existence of a testamentary contract is proved by reference to the nature of the contract, its terms, the circumstances antecedent to the will, and the circumstances existing when the parties joined in the will's execution.

The Tennessee Supreme Court has stated that in the case of joint wills:

> the courts generally, though not uniformly, held that the understanding to make a joint reciprocal will may be conclusively inferred from the fact of its execution, together with the provisions of the will and the circumstances existing when the parties joined in executing

**5.** See Page § 11.9 n. 9 and T. Atkinson, *Handbook on the Law of Wills* § 48, at 217 (2d ed. 1953).

it. *Seat v. Seat*, 172 Tenn. 618, 624, 113 S.W.2d 751, 754 (1938).

See also *Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 636, 202 S.W.2d 178, 180–81 (1947).

By requiring more proof of the existence of a contract other than the execution of a joint will, our courts have followed the majority view recognizing that

> The fact that joint wills and mutual wills are usually executed as a result of a common intention does not in any way mean that they are always executed pursuant to a contract between the parties respecting the making of such wills … It is more logical to expect that in many settings, particularly that of husband and wife, the reciprocity or similarity in the dispositive provisions of the two wills results from similar tastes and affections that have resulted from years of living together, and the making of identical or similar wills was spontaneous thing unaccompanied by even so much as a thought on the part of either the husband or wife that they should enter into a contract with each other. Page § 11.1, at 554.

Thus, our courts have always required more than the proof of the execution of a joint will to sustain a claim that a contract existed between the two parties to dispose of their estates in accordance with the terms of the will. *Harris v. Morgan*, 12 Tenn.App. 445, 448 (1930).

◼ Ann Russell's second erroneous assertion is that a joint will becomes "irrevocable" upon the death of the first testator. This fails to recognize the distinction between the contractual and the testamentary character of the instrument. Wills, by their very nature, must remain revocable until the testator's death. Pritchard §§ 27 & 243 and Page § 5.17. It is the contract to dispose of property in accordance with the terms of the will that becomes irrevocable at the death of the first testator. *Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 637, 202 S.W.2d 178, 181 (1947).

## IV.

### The Trial Court's Instructions

◼ The parties contesting the validity of Mrs. Warden's 1977 will also take issue with the trial court's instructions to the jury concerning their claim that the 1977 will should not be admitted to probate because the 1968 will became irrevocable when Mrs. Warden's husband died. This issue is without merit in light of our determination that the enforceability of Mrs. Warden's alleged contract with her husband to dispose of her estate in the manner provided in the 1968 will was not a proper matter to consider on the probate of the 1977 will. Even if it were, we find the issue was adequately submitted to the jury when the trial court's original instructions, its supplemental instructions and the special interrogatories submitted to the jury are considered.

◼ The trial court's remarks concerning the likelihood of an appeal in this case did not affect the judgment or prejudice the judicial process. Thus, in accordance with Tenn.R.App.P. 36(b), we find this issue to be without merit.

## IV.

The decision of the trial court is affirmed, and the case is remanded for further appropriate proceedings. The costs of this appeal are taxed against the appellants and their surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

## OPINION TAXING COSTS ON APPEAL

KOCH, Judge.

This Court affirmed the judgment of the trial court in an opinion filed on September 25, 1986. This opinion taxed the costs of the appeal against the appellants and their surety. On October 29, 1986, the appellees requested that the Clerk of this Court treat as costs to be taxed on appeal the costs they incurred in preparing portions of the transcript of proceedings which the appellants had not designated originally as part

of the record on appeal. The appellants have objected to this request.

## I.

Sadie M. Warden died in December, 1981. The father of her two great grandchildren filed a petition to probate her August 18, 1977 will in solemn form. Mrs. Warden's daughter and the daughter's children of her second marriage contested the will on three grounds: (1) lack of testamentary capacity, (2) undue influence, and (3) the irrevocability of the joint will Mrs. Warden and her late husband executed on April 1, 1968.

The trial in this case commenced on June 13, 1984 and proof was presented concerning all the contestants' theories. On June 19, 1984 at the conclusion of all the proof, the contestants moved for a directed verdict based on their theory that the 1968 joint will was irrevocable and invalidated Mrs. Warden's 1977 will. The trial court overruled this motion, and the case was submitted to the jury. The jury returned a verdict finding that Mrs. Warden had the testamentary capacity to execute her 1977 will and that this will was not the product of undue influence. The jury also found that Mrs. Warden and her late husband had not entered into a contract in 1968 to dispose of their estate and that their joint will executed in 1968 had not become irrevocable upon Mr. Warden's death.

The contestants filed a Tenn.R.Civ.P. 50.-02 motion for judgment notwithstanding the verdict premised upon their insistence that the 1968 joint will was irrevocable and, therefore, invalidated Mrs. Warden's 1977 will. They also filed a lengthy Tenn.R. Civ.P. 59 motion for new trial based, in part, upon the following grounds: (1) that the jury's verdict with regard to the irrevocability of the 1968 joint will was "contrary to the law"; (2) that the evidence preponderates against the jury's finding that Mrs. Warden and her husband did not enter into a contract in 1968 to dispose of their property by will; (3) that the evidence preponderated against the jury's finding concerning Mrs. Warden's testamentary capacity and the influence exerted on her when she

executed the 1977 will; and (4) that the trial court's instructions did not fully instruct the jury concerning the contestants' theories with regard to the irrevocability of the 1968 joint will, undue influence and lack of testamentary capacity.

The trial court denied the contestants' motions. Thus, the contestants filed a notice of appeal stating that they were appealing from: (1) the jury's verdict in favor of Mrs. Warden's 1977 will, (2) the trial court's denial of their Tenn.R.Civ.P. 50.02 motion for judgment notwithstanding the verdict, and (3) the trial court's denial of their Tenn.R.Civ.P. 59 motion for new trial.

Two weeks after they filed the notice of appeal, the contestants filed a notice that they intended to rely upon less than a full record on appeal. At that time, they stated that they intended to raise four issues on appeal. These issues were: (1) the trial court's denial of their motion for directed verdict and their motion for a judgment notwithstanding the verdict, (2) the adequacy of the trial court's instructions concerning the theory that the 1968 joint will was irrevocable, (3) the adequacy of the trial court's instructions concerning their theories of undue influence and lack of testamentary capacity, and (4) the trial court's statement to the jury that the case would probably be appealed no matter what the outcome was.

The proponents of the 1977 will did not concur that the portions of the record designated by the contestants were sufficient for the consideration of the issues the contestants sought to raise on appeal. The proponents of the 1977 will pointed out that

[t]he issues raised by the appellants are extremely broad, and involve questions that can only be resolved from a review of the entire testimony at trial. The issues raised by the appellants in their motion for judgment in accordance with the motion for a directed verdict deal primarily with allegations that the evidence in the case was uncontradicted in favor of the validity of the prior 1968 will rejected by the jury. This cannot be resolved without a full consideration of all trial testimony and exhibits.

Thus, the proponents requested that the entire transcript of the proceeding except the voir dire of the jury and counsel's opening statements be filed.

The contestants caused the entire record to be prepared but objected to being required to bear the costs of preparing the portions of the transcript requested by the proponents. On June 17, 1985, the trial court entered an order directing that the contestants bear the cost of preparing the portions of the record they thought were necessary and that the proponents bear the cost of preparing the portions of the record they thought were necessary.

## II.

■ Tenn.Code Ann. § 20–12–119 and Tenn.R.Civ.P. 54.04 give trial courts the authority to tax the costs incurred in the trial court. These determinations are within the trial court's discretion, and they will be reviewed on appeal only under very extraordinary circumstances. *Lewis v. Bowers*, 216 Tenn. 414, 423, 392 S.W.2d 819, 823 (1965) and *Ogle v. Trotter*, 495 S.W.2d 558, 566 (Tenn.Ct.App.1973). However, trial courts do not have the authority to tax the costs incurred on appeal. The taxation of these costs is within the jurisdiction of the appellate courts. See *City of Knoxville v. Brown*, 195 Tenn. 501, 509–10, 260 S.W.2d 264, 268 (1953).

Tenn.R.App.P. 24(a)(3) envisions that a complete transcript or statement of the evidence should be part of the record on appeal. However, Tenn.R.App.P. 24(b) permits an appellant to file less than a complete transcript if the determination of the issues it intends to raise will not require the appellate court to review the entire transcript. Thus, the party seeking to rely upon less than a complete transcript has the burden of demonstrating that less than a complete transcript will permit the appellate court to consider the issues sought to be raised and, pursuant to Tenn.R.App.P.

36(a), to grant the relief warranted by the law and the facts.

Tenn.R.App.P. 24(b) also permits an appellee to designate additional parts of the transcript if it determines that the appellant's designation of the record is not sufficient to convey a fair, accurate and complete account of what transpired in the trial court with respect to the issues the appellant seeks to raise on appeal. If the appellant does not agree with the appellee that additional portions of the transcript are necessary and refuses to prepare and file the additional portions requested by the appellee, Tenn.R.App.P. 24(b) permits the trial court to direct the appellee to prepare and file these additional portions at its own expense.[1]

The trial court's Tenn.R.App.P. 24(b) authority to determine which party has the responsibility to provide portions of the trial transcript for inclusion in the appellate record does not finally resolve the issue of which party will ultimately bear the costs of providing the disputed portions of the appellate record. After the Tennessee Supreme Court's decision in *Smith v. Watts*, 625 S.W.2d 712 (Tenn.1981), it can no longer be reasonably argued that the costs of preparing the transcript are not part of the costs to be taxed on appeal pursuant to Tenn.R.App.P. 40(c) or that the taxation of these costs are within the domain of the appellate courts.

■ The apportionment of costs on appeal depend upon the appellate court's disposition of the case. Tenn.R.App.P. 40(a). Thus, disputes regarding these costs cannot be resolved until the appeal has been decided. Once an appeal is decided, a party seeking to raise an issue concerning the taxation of the costs on appeal may do so in the appellate court by proper motion. It is not necessary that these issues be presented to the trial court or preserved in

---

1. The procedure governing the preparation and contents of records filed originally in the Court of Appeals is governed by Tenn.R.App.P. 24 and 25. Tenn.S.Ct.R. 3 requiring parties to abridge the record before it is filed applies only to appeals filed originally with the Tennessee Supreme Court. The Court of Appeals does not have a similar rule, although Tenn.Ct.App.R. 14 (Michie's Court Rules Annotated 1986–87) provides for a supplemental abridgement after the appellate record has been filed.

accordance with Tenn.R.App.P. 3(e) or 13(a) or (b).

### III.

The necessary contents of an appellate record depend upon the issues sought to be raised on appeal not upon the basis of the appellate court's decision. In most cases, Tenn.R.App.P. 27(a)(4) and 27(b) require that these issues be presented in the parties' briefs. However, these issues must be defined earlier in some cases. Tenn.R.App.P. 24(b) requires an appellant who seeks to rely upon less than a complete transcript to notify its adversary of its intent to do so and at the same time to prepare "a short and plain declaration of the issues he intends to present on appeal." The present appeal is such a case, and thus the proper contents of the appellate record should be judged with reference to the issues defined in the contestants' pleading styled "Abridgement of Transcript of Proceeding."

The contestants stated that among the issues they intended to raise on appeal were: (1) the denial of their motion for directed verdict and motion for judgment notwithstanding the verdict and (2) the adequacy of the trial court's instructions concerning their theories of undue influence, lack of testamentary capacity and the irrevocability of the 1968 joint will. Our determination of both of these issues required us to consider the entire transcript rather than the portions originally designated by the contestants.

This Court is required to review all the evidence when asked to pass upon the correctness of a trial court's decision concerning a motion for directed verdict. *Sauls v. Evans,* 635 S.W.2d 377, 379 (Tenn.1982) and *Potter v. Tucker,* 688 S.W.2d 833, 835 (Tenn.Ct.App.1985). The consideration of the issue regarding the irrevocability of the 1968 joint will required us to review all the proof concerning the circumstances of the parties who executed this will. Likewise, the consideration of the adequacy of the trial court's instructions requires us to review the entire record to determine whether these instructions properly informed the jury concerning each party's theory of the case.

### IV.

■ The contestants have failed to carry their burden of demonstrating that less than a complete transcript of the record conveyed a fair, accurate and complete account of what transpired with respect to the issues they sought to raise on appeal. Accordingly, it is ordered that the costs of this appeal, including the costs of preparing the entire transcript of the proceedings in the trial court, be taxed to the appellants and their surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.