OPINION
HARBISON, Chief Justice.
Appellants brought this action to set aside the probate of a will executed on *655 January 28, 1985, by decedent, Emma Jean Gilliam. The theory of the suit was that Mrs. Gilliam and her deceased husband, Thaddeaus Evans Gilliam, had executed mutual and reciprocal wills in 1974 and that upon the death of Mr. Gilliam in January, 1985, the 1974 will of Mrs. Gilliam had become irrevocable. Appellants also filed a claim against the estate of Mrs. Gilliam for the portion of the estate which they claim under her 1974 will.
Appellee filed a response, alleging that there was no contract between the parties and that the 1985 will of Mrs. Gilliam, already admitted to probate, should stand and be carried out according to its terms.
The probate judge, who was also a chancellor, conceived the action to be a will contest and certified it for trial to the law court in accordance with the provisions of T.C.A. §§ 32-4-101 et seq. In the law court new pleadings were filed on behalf of all parties, including an amendment by the appellants seeking to impose a constructive trust on the estate of Mrs. Gilliam and the executors thereof. The case was tried without a jury. Shortly before the trial began, a question was raised by counsel for appellants as to whether the case should not be transferred to chancery court because of lack of equitable jurisdiction in the law court to impose a constructive trust. Upon assurance by the judge that the court had equitable powers in the absence of an objection, all parties agreed to submit all of the issues to the judge in the law court. After a full trial, the judge held that appellants had not carried their burden of proof to establish a contract between Mr. and Mrs. Gilliam that would make her 1974 will irrevocable. The Court of Appeals affirmed. After careful consideration of all of the issues, we also affirm.
A. The Jurisdictional Issue
It is clear that under the provisions of T.C.A., § 16-10-111, the law court had jurisdiction to entertain any suit of an equitable nature and power to decide it upon principles of equity in the absence of an objection to the exercise of such jurisdiction. No such objection was made. On the contrary the parties expressly consented. We find without merit the contention of appellants that the case should have been transferred to the chancery court.
The case relied upon by appellants, Rogers v. Russell, 733 S.W.2d 79 (Tenn.App.1986) supports their position here except in counties having separate probate and chancery courts. In that case the Court of Appeals held that in actions of this nature proper procedure would be to seek relief by filing a claim against the decedent’s estate in the probate court. See 733 S.W.2d at 85. Further, in that case, specific objection had been made by the proponents of the subsequent will to the jurisdiction of the circuit court to try the alleged breach of contract claim. There had been no consent to trial in the circuit court as in the present case.
It appears from an examination of the cases on this subject that various procedures have been followed in actions such as this. In one of the leading cases relied upon by appellants, Harris v. Morgan, 157 Tenn. 140, 7 S.W.2d 53 (1928) suit was brought in chancery court for specific performance of a contract not to revoke a will and for the purpose of imposing a trust upon specific real estate. The Supreme Court held that such an action would lie, reversing a decision of the chancellor who had sustained a demurrer on the issue of the statute of frauds.
In another case, Petty v. Estate of Nichols, 569 S.W.2d 840 (Tenn.App.1977) the matter proceeded by a will contest and jury trial in circuit court.
As pointed out by the Court of Appeals in the Rogers case, supra, suits such as this are not strictly will contests, because any will is revocable. They are predicated upon a claim of prior contract between the testator and another. It is the contract which is sought to be enforced and which is alleged to be irrevocable, not the subsequent will itself. This distinction was recognized by this Court in the case of Church of Christ Home for Aged, Inc. v. Nashville Trust Co., 184 Tenn. 629, 637, 202 S.W.2d 178, 181 (1947). That action had been instituted as a suit for specific performance in chancery court. In its opin *656 ion, this Court called “highly technical” the distinction between a suit on an alleged contract and a claim that a prior will was irrevocable.
We are in agreement with the Court of Appeals in the Rogers case, 733 S.W.2d at 85, that actions such as this could be prosecuted by a claim against an estate in probate court. In the present case, however, the appellants alleged that the probate of Mrs. Gilliam’s second will was void and that instead her prior will executed in 1974 should be probated and established. At least in form, a will contest was presented. This is the reason the probate judge certified the matter to the law court. In the law court, no objection was made to equitable jurisdiction being exercised, including the imposition of a constructive trust if deemed appropriate. Under the circumstances, we find without merit the jurisdictional issue sought to be raised by appellants.
B. The 1974 Wills
Mr. and Mrs. Gilliam were married in 1967. This was the second marriage for each. Mr. Gilliam had three children by his former marriage, and Mrs. Gilliam had two. No children were bom to this second marriage.
Prior to February 22,1974, Mr. and Mrs. Gilliam had discussed making their wills. Mr. Gilliam is shown to have had a separate estate, the amount of which does not appear in the record. It is shown that he owned several pieces of real estate. Whether Mrs. Gilliam had a separate estate does not appear.
On or about February 1, 1974, Mr. and Mrs. Gilliam made an appointment with Mr. Thomas McKinney, Jr., an attorney who had practiced in Kingsport, Tennessee, for several years. He had never met either of the Gilliams previously. He testified that he discussed with them a number of possible dispositions which they might make of their property, including life estates with remainder. There was a general discussion of the subject of wills, the revocation thereof and contracts to make wills irrevocable. Inter vivos gifts were also discussed, but no conclusions were reached during the first meeting.
About three weeks later, on February 22, 1974, Mr. and Mrs. Gilliam returned to the attorney’s office and instructed him to write the wills which are.in question. They also instructed him to write a warranty deed from Mr. Gilliam to himself and his wife so as to create a tenancy by the entirety in the property on which their residence was situated. This warranty deed was duly executed and was recorded. It is in the record, and there is no issue between the parties concerning it.
The parties executed separate wills on February 22, 1974, which were mutual and reciprocal. In his will, Mr. Gilliam directed payment of debts and funeral expenses. He then left all of his property outright to his wife, Mrs. Gilliam, “except as otherwise directed in Item III hereof....”
In Item III the will provided that if Mrs. Gilliam did not survive the testator, or if she died within 90 days after his death as a result of a common disaster, then all of Mr. Gilliam’s estate was to be divided equally among the five children of the parties; that is, Mr. Gilliam’s three children and the two children of Mrs. Gilliam.
The will of Mrs. Gilliam was written in exactly the same language, leaving everything to Mr. Gilliam but to the five children of the parties in the event he did not survive her. The same persons witnessed both wills.
Mr. Gilliam died on January 21, 1985. Mrs. Gilliam did survive, and the parties were not involved in “a common accident.” She survived for more than 90 days, although she did die a little less than 7 months later, on August 11, 1985.
In the meanwhile, shortly after the death of her husband, Mrs. Gilliam wrote another will, executed on January 28, 1985, leaving the entire estate to her children by her first marriage. They are the executors of her estate and are the appellees herein. There is no evidence of fraud, undue influence or lack of mental capacity, and no claim of such. Mr. McKinney, who also wrote the second will, did state that Mrs. Gilliam *657 appeared to be very emotional and upset after the death of her husband. Her statements to him seem to indicate a feeling of insecurity as to whether Mr. Gilliam’s children by his first marriage might be able to take the estate from her and leave her with very few assets. There is no testimony in the record, however, concerning any actual controversy between Mrs. Gilliam and the children of Mr. Gilliam’s first marriage, who are the appellants here.
Under the terms of Mr. Gilliam’s 1974 will, the entire estate vested in Mrs. Gilliam upon his death, unconditionally and without any kind of restraint or restriction. Unless a contract between the parties could be proved, so as to make her will of the same date irrevocable, she was free to dispose of the estate as she saw fit.
There was very little evidence concerning any such contract. Mr. Gilliam’s brother and other witnesses testified that in the eleven years between the execution of the 1974 wills and the death of Mr. Gilliam in January, 1985, Mr. and Mrs. Gilliam made reference that they had “traded wills.” Counsel for appellants insist that this is clear evidence that the wills were intended by Mr. and Mrs. Gilliam to be irrevocable after the death of the first of them and resulted from a contract between the parties to that effect.
We respectfully disagree. It is well settled that in order to establish a contract to make or not to revoke a will, where the contract is not otherwise documented, evidence of such a contract must be clear and convincing. The mere fact that parties have executed mutual and reciprocal wills on the same date is not, in and of itself, sufficient to establish the existence of such a contract. See First Christian Church of Guthrie, Kentucky v. Moneypenny, 59 Tenn.App. 229, 439 S.W.2d 620 (1968). That fact, together with other evidence concerning the circumstances of the parties, may be sufficient to establish such a contract. Church of Christ Home for Aged, Inc. v. Nashville Trust Co., 184 Tenn. 629, 202 S.W.2d 178 (1947). The issue, however, in every case is one of fact, not law, to be determined in light of all of the surrounding circumstances. In the Church of Christ Home case, supra, there had been a concurrent finding of fact by the trial court and the Court of Appeals that an agreement to execute irrevocable mutual wills did, in fact, exist. Since there was material evidence in the record to support that finding, the issue was foreclosed in the Supreme Court. T.C.A. § 27-1-113.
In the present case, there is a concurrent finding of fact by the trial court and the Court of Appeals that no such agreement was established by the evidence. That conclusion, likewise, is binding here if supported by material evidence.
The evidence to establish a contract not to revoke a will must be clear and convincing. Stone v. Manning, 103 Tenn. 232, 52 S.W. 990 (1899). The evidence offered by the appellants to show such a contract in the present case was not sufficiently clear or precise to establish a binding contract between Mr. and Mrs. Gilliam that the survivor would not revoke his or her 1974 will. The wills accomplished what each of the spouses apparently desired — that is, each left everything to the survivor provided they were not involved in a common accident with the survivor expiring within 90 days thereafter. Alternate dispositions in each will were identical, but it is clear that the children of the parties were no more than just that — alternate beneficiaries. Legally the entire estate vested in the surviv- or, and there is nothing in the text of the wills themselves nor in the brief and informal remarks of Mr. and Mrs. Gilliam shown in evidence to establish a firm and binding agreement that the survivor was restricted in any way in his or her subsequent disposition of the property covered by these wills. The residence of the parties, which was the subject of a simultaneous deed, of course, passed to the surviv- or under the tenancy by the entirety which was created, without restraint, condition or restriction.
Wholly apart from the testimony of the scrivener of the will, Mr. McKinney, the trier of fact was not compelled in this case to conclude that such a contract as contended for by appellants in fact existed. When *658 the testimony of Mr. McKinney is considered, however, it clearly affords material evidence to support the conclusions of the trial court that no such contract was ever made.
Appellants contend that the testimony of Mr. McKinney as to the intention of Mr. and Mrs. Gilliam is inadmissible. In support of that proposition they cite Fisher v. Malmo, 650 S.W.2d 43, 45-46 (Tenn.App.1983) and Nichols v. Todd, 20 Tenn.App. 564, 101 S.W.2d 486 (1936). Both of these cases hold that the draftsman of a will cannot express an opinion as to the intention of the testator with respect to the interpretation of legal terms such as “heirs.”
Even if Mr. McKinney’s testimony in the present case may have partly offended that rule, the bulk of it did not. Most of his testimony consisted of his general discussion of the law of wills and several possible dispositions with the parties on February 1, 1974, and his testimony that they expressly disclaimed to him any contractual restrictions upon the survivor when they executed their wills on February 22 which contain no such restrictions.
The judgments of the courts below that the surviving spouse received the estate free of any contractual restrictions are affirmed.
■ C. The 1977-78 Statutes
The Court has been furnished excellent briefs by the parties in this case and has been greatly assisted by the able oral argument presented on both sides. The briefs of the parties refer to the numerous cases in Tennessee on the subject of joint wills and of mutual and reciprocal wills.
Probably because of the large body of case law in this state dealing with the subject, the General Assembly has enacted statutes rather rigidly prescribing the requirements of a contract to make a will, not to revoke a will or to die intestate. The first of the statutes was 1977 Tenn. Public Acts, chapter 88, which provided that contracts of this nature might be established in certain ways. This statute was replaced by 1978 Tenn. Public Acts, chapter 745, now codified as T.C.A. § 32-3-107, providing that such contracts can be established only by:
(1) Provisions of a will stating material provisions of the contract;
(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
(3) A writing signed by the decedent evidencing the contract.
(b) The execution of a joint will or mutual wills does not create a presumption of a contract to make a will, or to refrain from revoking a will.
The latter statute was designated as the “Trautman Act of 1978.” It was named after a distinguished professor at the Vanderbilt University School of Law who participated in this case as counsel but stated that he had no part in the drafting of the statute. The statute is patterned after a model which has been enacted in a number of states. Unlike the provisions in most states, however, this statute contains no provision limiting its effect to wills executed on or after its effective date.
For this reason, counsel for appellees has insisted that the statute should be deemed retroactive and should apply to contracts to make wills entered into before its effective date. It is clear that the 1978 statute is more restrictive than that which was first enacted in 1977. If the 1978 provisions should be applicable to any alleged contract between Mr. and Mrs. Gilliam made in 1974, it is obvious that no contract meeting its requirements has been established.
While the omission from the Tennessee statutes of a provision contained in a model code could have some significance, in our opinion, the 1978 statute, which is the only one remaining in effect, should not be construed as applying retroactively. It prescribes exclusive methods by which a contract to make a will, to revoke a will or to die intestate may be established. There is some authority in other states that such statutes can be given retroactive effect without offending constitutional prohibitions against the impairment of contracts. Appellees particularly cite and rely upon the case of Floerchinger v. Williams, 260 Iowa 53, 148 N.W.2d 410 (1967).
*659 The provisions of the Iowa statute are not the same as those of the Tennessee statute under consideration. Regardless of whether any constitutional limitations may be involved, it is our opinion that the General Assembly did not intend for the 1978 statute to be retroactive. The Legislature replaced a 1977 statute which was merely directory or permissive, prescribing certain ways in which such contracts “may be established.” These provisions were replaced by the more stringent terms of the 1978 statute quoted above, to the effect that such contracts “can be established only” in certain prescribed ways.
The 1977 statute did not purport to be exclusive in its terms. The provisions of the 1978 statute were exclusive and mandatory. In our opinion, the rights of parties, contingent or otherwise, which might have come into existence prior to the adoption of the 1978 statute should not be deemed to be affected thereby, and we decline to give retroactive effect to that statute as requested by counsel for appellees.
The judgments of the courts below are affirmed at the cost of appellants. The cause will be remanded to the trial court for collection of costs accrued there and for any other proceedings which may be necessary.
FONES, COOPER, DROWOTA and O’BRIEN, JJ., concur.