SEAT *et al. v.* SEAT.

*(Nashville,* December Term, 1937.)

Opinion filed March 5, 1938.

E. W. EGGLESTON, of Franklin, for appellant.

T. P. HENDERSON and JOHN H. HENDERSON, both of Franklin, for appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainants are beneficiaries of the estate of J. T. Seat, who died April 22, 1935. The defendant is his widow and joined her husband August 29, 1928, in disposing of their property by will. When the will was executed Mr. and Mrs. Seat were past middle age and childless. They owned real estate as tenants by the entirety worth $13,000, and other real estate as tenants in common worth $3,500, and in addition owned in common some personal property. The property had been

620

acquired by their joint efforts and by inheritance. The will reads:

"We, J. T. Seat and wife Carrie M. Seat do hereby make, publish and declare this to be our joint and separate last will and testament, hereby revoking and making void all other wills and testaments by either of us heretofore made.

"Item 1. We direct that all of our just debts be paid by our Executor hereinafter named, as soon as practicable after our demise.

"Item 2. We are the owners of certain personal and real properties, practically all of which has been produced and accumulated by the joint efforts of both of us, all of which said properties, real, personal and mixed, except such as is hereinafter specifically bequeathed, we and each of us do hereby will, devise and bequeath to the survivor of us, for and during his or her natural life, and at the death of the survivor one-half of said properties shall vest in the heirs-at-law and next-of-kin of the said J. T. Seat, and the other one-half thereof shall vest in Ben Meek and Mrs. Josie Smithson, the brother and sister of the said Mrs. Carrie M. Seat.

"Item 3. The said Mrs. Carrie M. Seat is the owner of certain dress and personal adornments, consisting of jewelry, silverware, bedding and similar articles, which were the property of her mother and grandmother, all of which said articles the said Mrs. Carrie M. Seat does hereby will and bequeath to the said Ben Meek and Mrs. Josie Smithson, share and share alike.

"And I, the said J. T. Seat hereby nominate and appoint the said Carrie M. Seat Executrix of this will, in the event she shall survive me, and request that she be not required to execute bond as such Executrix. And

the said Mrs. Carrie M. Seat does hereby nominate and appoint the said J. T. Seat Executor of this her last will and testament, in the event the said J. T. Seat shall be the survivor. In the event however that the said J. T. Seat shall predecease said Carrie M. Seat, the said Carrie M. Seat hereby nominates and appoints her brother, the said Ben Meek as Executor of this will.''

After the death of J. T. Seat, defendant probated the joint will and qualified as executrix May 17, 1935. In July, 1935, she resigned as executrix, dissented from the will, and applied for assignment of dower from the land owned in common.

The bill was filed by complainants, heirs of J. T. Seat and beneficiaries of the will, to enjoin defendant from defeating the provisions of the will in so far as it concerned the disposition of property for their benefit. Defendant denied existence of any contractual basis for the will. We quote from her answer:

''Respondent would now show that prior to the execution of said joint will by her and her husband on August 29th, 1928, there had never been any discussion, agreement or contract between them about the making of a will, nor any agreement about how the property which they own should pass upon their deaths, or upon the death of either of them, but on said date the parties came to the Town of Franklin for the purpose of J. T. Seat making a deed to respondent for a half undivided interest in the two tracts or parcels of land last described hereinabove, being situated in the 20th Civil District of Williamson County. The consideration for this conveyance was, as recited in said deed, the sum of $1,000.00, which was paid by respondent and the receipt of which was acknowledged by J. T. Seat, and the fur-

ther consideration that some of respondent's funds had been invested in other property, which had been conveyed to respondent and her husband together. As a matter of fact, upon the marriage of the parties, respondent had means of her own, and she advanced her husband $1,000.00 which he used to pay off some obligations of his, and she had also paid jointly with him for the property that had been conveyed to her and J. T. Seat as tenants by the entirety. Her husband proposed deeding her a one-half interest in the two tracts of land, last above described, the title to which was held by him alone, and upon the day that said will was executed the parties came to Franklin, as above stated, for the sole purpose, so far as respondent knew, of consummating this conveyance. Upon arriving in said town, respondent's husband went to his attorney while respondent remained in their automobile, and had some papers prepared, which it developed later were the deed by which the half interest was to be conveyed to respondent in the lands just referred to, and also a joint will. After said papers were drawn, respondent's husband came out to the car and told her that the papers were ready, and she thereupon went into the office of her husband's attorney and the deed and will were read over to her and were executed. Respondent states that up until the time when the will was read over, there had never been at any time any discussion between her and her husband about the making of a will, or any agreement or discussion between them as to how their property should pass after their deaths, or after the death of either of them, and respondent did not know that a will was to be made when she came to Franklin on the day stated. While she has no independent recollection

of said will having been read over to her, she presumes, and is willing to admit, that the same was read to her, but she did not know then the effect of the will and she signed the same solely at the suggestion and instance of her husband, and emphatically not as the result of any prior agreement or contract between respondent and her husband.''

The cause was heard by the chancellor upon bill and answer. He sustained the bill, and defendant appealed. It is insisted that there is no evidence of an agreement to support the chancellor's finding, and that statements in the answer show the nonexistence of an agreement between the parties to make the will, a fact required to support complainants' claim. It is the contract, not the will, that must be established. The will is revokable, but not the contract. Either party to the will could have revoked it during their lives and the survivor could do so, in so far as it concerns the disposition of her own share of the estate. Schouler on Wills, 5th Ed., Vol. 1, p., 577. So the question arises as to whether the terms of the joint will and the circumstances antecedent to the will and surrounding the parties when it was executed are sufficient to overcome the denials in the answer.

Matters of fact stated by way of defense in the answer or in avoidance of the right alleged in the bill are to be taken as true, but this does not exclude legal inferences that may be reasonably drawn from the facts stated. *Rodgers* v. *Rodgers,* 53 Tenn. (6 Heisk.), 489. Otherwise expressed in Gibson's Suits in Chancery, section 439: ''The rule that the answer is to be construed as true in all its parts does not mean that the legal deductions insisted on in the answer are to be considered as true.''

The execution of the will is admitted in the answer. And there is no suggestion in the answer of deception, duress, or fraud. The property disposed of was owned jointly or in common by Mr. and Mrs. Seat, and it was jointly disposed of, each reserving a life estate and passing a half interest in the remainder to their heirs, respectively.

 There is some confusion in the cases, probably because the distinction is not kept clear between the degree of proof applicable in cases involving separate but mutual wills and in cases involving joint wills, and joint dispositions of common property. Where mutual wills are involved it is generally held that the contract to make a joint testamentary disposition cannot be inferred because the wills might have been made without either party knowing that the other was executing it. That infirmity does not arise in cases involving a joint will, simultaneously executed. The fact of a concurring purpose and intent is shown by the writing itself and by the signature of the parties, and proof *aliunde* the will is not necessary to show concurrence of purpose or mutual intent. In such cases the courts generally, though not uniformly, hold that the understanding to make a joint reciprocal will may be conclusively inferred from the fact of its execution, together with the provisions of the will and the circumstances existing when the parties joined in executing it. The foregoing rule is supported directly or in principle in many cases. Among them *Gray* v. *Perpetual Trustee Co.* (Eng.), 60 A. L. R., 617; *Beveridge* v. *Bailey,* 53 S. D., 98, 382, 220 N. W., 462, 868, 60 A. L. R., 619; *Canada* v. *Ihmsen,* 33 Wyo., 439, 240 P., 927, 43 A. L. R., 1011, Note VI; *Doyle* v. *Fischer,* 183 Wis., 599, 198 N. W., 763, 33 A. L. R.,

733; *Stevens* v. *Myers,* 91 Or., 114, 177 P., 37, 2 A. L. R., 1155; *Frazier* v. *Patterson,* 243 Ill., 80, 90 N. E., 216, 27 L. R. A. (N. S.), 508, 17 Ann. Cas., 1003; *Clements* v. *Jones,* 166 Ga., 738, 144 S. E., 319. The terms of the joint will, the fact that the greater part of the real estate was held by the entirety and might have passed to the survivor, that the property was acquired by the parties and owned jointly or in common, that defendant left the will in force from the date of execution until her husband's death, and the equitable manner in which the parties disposed of their joint and common property, authorizes the inference that some sort of domestic prearrangement was made by Mr. and Mrs. Seat looking to an equitable division of their property and which culminated in their joint will. As said in *Harris* v. *Morgan,* 157 Tenn., 140, 153, 154, 7 S. W. (2d), 53, such facts negative any conclusion but that the will was executed pursuant to agreement. See, also, *Harris* v. *Morgan,* 12 Tenn. App., 445.

If Mr. Seat had survived his wife and could have revoked their joint will, he would have succeeded to all of the estate by the entirety and her brother and sister could have had no share of it. Mr. Seat observed the arrangement they had made and so did Mrs. Seat, until her husband's death, and when she might have, in the absence of some prearrangement, succeeded to all of the estate by the entirety. She cannot now be heard to repudiate her contract evidenced by the joint will and the surrounding circumstances in so far as her dissent affects the joint disposition of half the estate in remainder to the heirs of J. T. Seat.

Affirmed.