WARD *et al. v.* CRISP *et al.*

*(Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

Rehearing Denied February 10, 1950.

514

James P. Brown, of Knoxville, for complainants.

White & Leonard, of Knoxville, for defendants.

Mr. Justice Burnett delivered the opinion of the Court.

This case arises over a conflict for the possession of church property between two opposing factions in a congregation of Wards Chapel Church of God.

The case was tried on bill and answer. At the conclusion of the argument the Chancellor granted the injunction as prayed ordering "a permanent injunction be issued prohibiting the defendant from joining the Assembly of the Church of God."

By warranty deed dated October 1, 1935 and recorded July 25, 1938, the property in question was conveyed to the appellant trustees by a general warranty deed. At

516

the conclusion of the description to the property the following sentence was included, to wit: "Wards Chapel Church of God, is to be ruled by the majority of the said church members, and not by the Assembly."

The bill avers that there is an organization known as the Assembly of The Church of God whose purpose it is to manage and control all of the churches throughout the land of the faith of the Church of God, and there is an overseer whose duty it is to manage the Assembly. It is also said in the bill that shortly prior to the filing of the bill herein, a number of the members of this church, probably constituting a majority, voted to join the Assembly, It is averred likewise that when the Wards Chapel Church thus joined the Assembly that this in effect amounted to turning over the property to the Assembly so that the Assembly might direct the church, and rule the church which was "contrary to said restrictions", i. e., contrary to the language above quoted from the deed. It was also alleged in the bill that there are a number of the present members of Wards Chapel Church who oppose the joining of the Assembly and who oppose conveying the property to the Assembly and who favor maintaining the Church as it was originally organized, and complainants represent this group.

The defendants' answer admits most of the averments of the bill including the conveyance and the restriction in the deed as above set forth. The defendants say though that no action has been taken or contemplated "to place the physical property of the Church in the control of the general Assembly of the Church of God or to any overseer of said church." They also take the position that the action should be dismissed because the civil courts have no jurisdiction of the matters involved which are

wholly ecclesiastical. They say that by voting to join the Assembly the Church membership is merely voting to co-operate with the general organization of the Church of God because of the spiritual and ecclesiastical benefits that the Wards Chapel Church might receive by joining the larger organization and that no property interests or property rights are involved.

MR. JUSTICE LURTON, speaking for this Court, in *Nance* v. *Busby*, 91 Tenn. 303, 18 S. W. 874, 876, 15 L.R. A. 801, very distinctly and ably sets forth the legal principles applicable under a factual situation as here presented, he said: ''The jurisdiction of a civil court to adjudge any ecclesiastical matter must result as a mere incident to the determination of some property right. Thus, when property has been conveyed to some religious use, and that use is express and specific, and has been indicated by the donor, and is set out in the conveyance, a trust arises, and a court of equity will, upon application of the beneficiaries, as it would in case of any other sort of valid trust, prevent any diversion of such property to any other than the purposes of the founders of the trust. In the case of a definite trust for the maintenance of a particular faith or form of worship the court will even go so far as to prevent the diversion of the property by the action of a majority of the beneficiaries, and, if there be a minority, who adhere to the original principles, such minority will be held to comprise the exclusive beneficiaries, and entitled to the control and enjoyment of the property without interference by the unfaithful majority.''

It is perfectly apparent that the purpose of the grantor in the deed was that the Wards Chapel Church of God be an independent Church to be ruled by the mem-

bers of that church and not to be interfered with by the general Assembly. The perfectly obvious conclusion to be drawn from this restriction is that the purpose of the grantor was that these people should control themselves locally, within their own church, and that they were not to be controlled by some board or organization away from this individual church.

Under the pleadings here it is perfectly obvious, and is the only logical conclusion, that when the Wards Chapel Church joined the Assembly of the Church of God that they thereby placed the rule and control of this Church property, that is, the physical property within the control and management of the Assembly of the Church of God and took it away from the control of the local church—Wards Chapel Church. This will amount to a turning over of the property to the Assembly, a thing that was clearly prohibited in the trust created by the conveyance in question.

The Supreme Court of the United States in the case of *Watson* v. *Jones,* 13 Wall. 679, 20 L. Ed. 666, 675, said: ''If the trust is confided to a religious congregation of the independent or congregational form of church government, it is not in the power of the majority of that congregation, however preponderant, by reason of a change of views on religious subjects, to carry the property so confided to them to the support of the new and conflicting doctrine.'' This same principle and holding has been followed on many occasions and is one of the authorities cited by MR. JUSTICE LURTON in the quotation from *Nance* v. *Busby, supra.*

We must conclude, therefore, that even though no attempt has been made or is contemplated to place the physical property in question under the control of the

general Assembly of the Church of God that since the Wards Church by a majority vote has moved to join the general Assembly that by thus doing they have clearly placed the control of the physical property of this Church under the jurisdiction of the general Assembly and by thus doing so they are violating the terms of the trust under which the property herein was conveyed. The injunction of the Chancellor must therefore be sustained.

■ This injunction is against these individuals as constituting Wards Chapel Church of God and not as to them as individuals. As individuals they have the right to join any church they wish to. They are entitled to any belief they wish and we cannot and must not interfere with them in this regard. Here, though, there is a trust affecting property. By their actions herein they clearly violate this trust. We, a civil Court, must enter and prevent this violation of a property right.

The decree below is affirmed with costs.

### On Petition to Rehear

The appellants have filed a respectful and forceful petition to rehear, based on the argument presented by the original assignments of error. This petition, though, is grounded on the proposition that "the facts as stated in the answer must be taken as true", and, that the answer alleged "no action was contemplated affecting the property of the local church."

We have again considered this matter and must disagree with appellants. Under Section 3 of the original bill it was alleged that there was an organization known as the Assembly of the Church of God whose purpose it was to manage and control all the churches throughout the land of that faith, and, that there was an

overseer whose duty it was to manage this Assembly. It was also alleged in this section of the bill that a portion of the membership and the pastor had joined the Assembly for the purpose "of having the Assembly rule said Church which was contrary to said restriction." It was also alleged that the "defendants and members of the church are seeking to direct the trustees of the church, the defendants herein, to convey the property described to the Assembly of the Church of God, which they have no right or authority to do under the law according to the facts stated herein."

Under these allegations an injunction was asked "to prohibit the defendants from conveying the said property to the Assembly".

In the answer of the defendants they say that they admit the allegations "of Section 3 of said bill, except that they do not admit the allegations of the bill as to desires of Mrs. Ward's husband nor admit that his desires are material, since restrictions in the deed in question are plainly set forth and must control."

After making these admissions as to the allegations of the bill the defendants say that "there has been no action taken or contemplated to place the physical property of the church in the control of the General Assembly of the Church of God or to any overseer of said church, . . . ". The answer then avers as a fact that on a vote of the membership and friends that 60 voted to continue "in cooperation with the General Assembly with only the complainant Ward and wife and the complainant Palmer voting against so remaining in cooperation." It seems to us from these allegations that there is, if not a clear admittance, an inference that the defendants contemplated taking possession of the

physical property, that is, if the Assembly rules the Church it automatically controls the physical property. Under such an admitted fact the ruling of the Chancellor on an ecclesiastical matter is a mere incident to the property right involved. The restriction in the deed asked to be enforced is that the named church "is to be ruled by the majority of the said church members, and not by the Assembly."

We have not in any way, by our original opinion herein or now, intended to modify the rule of this Court that "matters of fact stated by way of defense in the answer or in avoidance of the right alleged in the bill are to be taken as true, but this does not exclude legal inferences that may be reasonably drawn from the facts stated." *Seat* v. *Seat,* 172 Tenn. 618, 623, 113 S. W. 2d 751, 753. We think this is a good and salutary rule and have intended herein to stay within the rule.

We think, though, from the allegations of the bill and the answer, when taken as a whole, that the only legal inference to be drawn therefrom is that the effect of the action taken herein was to transfer the control of the physical property of this church to the General Assembly. It is for this reason that the injunction of the Chancellor was sustained. The petition to rehear must be denied with costs.

All concur.