**In re ESTATE OF J.T. HURDLE,
Deceased.**

Court of Appeals of Tennessee,
Western Section at Jackson.

Jan. 22, 1993.

Certiorari Denied by Supreme
Court June 1, 1993.

Blanchard E. Tual, Memphis, for appellants, Louis W. Pardue and Ronald P. Pardue.

Edward B. Johnson, Wilder and Johnson, Somerville, for Estate of J.T. Hurdle.

HIGHERS, Judge.

Plaintiffs, Larry J. Pardue, Louis W. Pardue and Ronald P. Pardue, filed a petition in the Chancery Court at Fayette County to determine the heirs of the estate of J.T. Hurdle. The court held that the wills of Ruby and J.T. Hurdle were mutual and irrevocable and that J.T. Hurdle's estate passed to his heirs at law. The plaintiffs have appealed. The determinative issue is whether the Hurdles' wills are mutual and irrevocable.

The record on appeal consists primarily of the Chancery Court's findings of fact and opinion of law. J.T. and Ruby Hurdle were married for approximately 50 years. While no children were born of this marriage, Ruby Hurdle had two children from a previous marriage.

J.T. Hurdle executed his will in January of 1957 and Ruby Hurdle executed her will in July of 1974. The provisions of their wills were identical. In particular, Item II of J.T. Hurdle's will states that, "I, give, devise and

bequeath unto my wife, Ruby S. Hurdle, all of my property both real and personal of every nature and kind in fee simple." Item II of Ruby S. Hurdle states, "I, give, devise and bequeath unto my husband, J.T. Hurdle, all of my property both real and personal of every nature and kind in fee simple."

Ruby Hurdle died in 1988 and J.T. Hurdle died in 1990. J.T. Hurdle's heirs at law are his siblings and the descendants of his deceased siblings. Ruby Hurdle had two children from a previous marriage who predeceased J.T. Hurdle. One of Ruby Hurdle's deceased children left three surviving issue (Ruby's grandchildren). Following J.T. Hurdle's death, the court appointed Robert W. Hurdle, J.T.'s Hurdle's nephew, as the administrator of J.T. Hurdle's estate. Shortly, thereafter, Larry J. Pardue, Louis W. Pardue and Ronald P. Pardue, Ruby Hurdle's grandchildren, filed a petition to determine the heirs of the estate of J.T. Hurdle. Larry J. Pardue subsequently disclaimed his inheritance, if any, in the estate.

█ The court found that Ruby Hurdle and J.T. Hurdle's wills were bound together in the same will jacket of J.T. Hurdle, that the wills were found in the joint safe deposit box of J.T. Hurdle and Ruby Hurdle, and that the wills contained identical items. Based on those facts, the court held that Ruby Hurdle and J.T. Hurdle made a contract on July 19, 1974, to make their wills mutual and irrevocable. Consequently, the court found that the parties' wills constituted a single will and that upon her death, Ruby Hurdle's will became the sole effective will of the parties. Consequently, the court held that on J.T. Hurdle's death all his property passed under the laws of descent and distri-

bution to his heirs at law. Two of the plaintiffs below have appealed to this court.

Appellants' position is that the evidence in the record is insufficient to establish that the wills of J.T. and Ruby Hurdle were mutual and contractually binding on the last to die. As such, appellants contend that under the Tennessee anti-lapse statute, T.C.A. § 32–3–105[1], they are entitled to J.T. Hurdle's estate pursuant to the terms of his will. We agree.

█ Generally, a will is ambulatory and revocable during a person's lifetime. Parties may, however, contract with each other to limit future testamentary distribution of property by the survivor. In such a case, the will of the first party to die is the will of both parties and the will of the last party to die is ineffective. In 1977, the General Assembly enacted T.C.A. § 32–3–107[2], later designated as "The Trautman Act of 1978," which describes the requirements of a contract to make a will. This statute does not apply retroactively. *Junot v. Estate of Gilliam,* 759 S.W.2d 654 (Tenn.1988).

Prior to the enactment of the Trautman Act, courts generally looked to the terms of the parties' wills and the circumstances surrounding the execution of the wills when faced with the question of whether parties intended contractually to limit the survivor's right of disposition. *Harris v. Morgan,* 157 Tenn. 140, 7 S.W.2d 53 (1928), established the principle that a court should consider the circumstances surrounding the execution of wills in addition to the wills themselves before reaching a conclusion that a contract exists between the testators. In *Harris,* the decedent was part owner with his two sisters and a brother of certain property which was operated for the mutual benefit of the four.

---

1. **32–3–105. Death of devisee or legatee before death of testator.**—Whenever the devisee or legatee to whom, or any member of a class to which, an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, leaving issue which survives the testator, the issue shall take the estate or interest devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had he survived the testator, unless a different disposition thereof is made or required by the will.

2. **32–3–107. Contracts to make or revoke wills.**—(a) A contract to make a will or devise, or

not to revoke a will or devise, or to die intestate can be established only by:

(1) Provisions of a will stating material provisions of the contract;

(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

(3) A writing signed by the decedent evidencing the contract.

(b) The execution of a joint will or mutual wills does not create a presumption of a contract to make a will, or to refrain from revoking a will.

The siblings made an oral agreement that each would make a will that provided that after the death of the last survivor the property would be divided among the children of the decedent and all four wills were executed as agreed. After the first sibling died, the remaining siblings announced their intention to revoke their wills and make another disposition of their interest in the property. The primary question for the court was whether the four wills of the siblings were sufficient written evidence of a contract to meet the requirements of the statute of frauds. The Tennessee Supreme Court stated that:

> [I]t seems to us proper to consider the circumstances under which each of the four wills was prepared and executed.... Looking to these circumstances it appears that the four wills were executed simultaneously, at the same place, and were witnessed by the same persons. They manifest a joint purpose, which could not be consummated except through the co-operation and agreement of the four parties in interest, that their joint property be held intact until the death of the survivor, and then be distributed among the children of one of them.
>
> The four instruments, executed *under these circumstances*, must necessarily be considered as parts of a single transaction, to the same extent as if they had been executed upon the same sheet of paper. It is proper, therefore, that they be construed and considered together, and not each one separately. (emphasis added)

*Id.* 7 S.W.2d at 55–56.

The question of a testator's contractual intent to limit disposition arises most often in the case of mutual wills and joint and mutual wills. Mutual wills are separate wills of two persons which are reciprocal in their provisions. The wills of the parties in the case at bar are mutual. A joint and mutual will, on the other hand, is one will executed by two persons with reciprocal provisions, which shows on its face that the devises were made one in consideration for the other.

The Tennessee Supreme Court recognized the importance of this distinction to the question before this court in *Seat v. Seat*, 172 Tenn. 618, 113 S.W.2d 751 (1938). In *Seat*, the testators, who were husband and wife, executed a joint will that recited that most of their personal property had been produced and accumulated by their joint efforts. The will bequeathed a life estate to the survivor and one-half of the remainder of the property to the heirs-at-law and next-of-kin of the husband and the other one-half to the brother and sister of the wife. After the husband died, the widow probated the will but thereafter attempted to dissent from it. In holding that the husband and wife intended contractually to bind one another, the *Seat* court stated:

> Where mutual wills are involved it is generally held that the contract to make a joint testamentary disposition cannot be inferred because the wills might have been made without either party knowing that the other was executing it. That infirmity does not arise in cases involving a joint will simultaneously executed. The fact of a concurring purpose and intent is shown by the writing itself and by the signature of the parties, and proof aliunde the will is not necessary to show concurrence of purpose or mutual intent. In such cases the courts generally, though not uniformly, hold that the understanding to make a joint reciprocal will may be conclusively inferred from the fact of its execution, together with the provisions of the will and the circumstances existing when the parties joined in executing it.

*Id.* 113 S.W.2d at 753–54.

A more recent discussion of the contractual limitations in wills is found in *In re Estate of Bright*, 482 S.W.2d 555 (Tenn.1972). There a husband and wife executed reciprocal wills each naming the other as the beneficiary of the estate. The wife's heirs contended that they were entitled to all of the estate pursuant to the terms of the husband's will. The husband's heirs contended that the testators executed their wills pursuant to a contract and that the two wills were a single will because the will of the survivor became ineffective when the first testator died. In holding that the wills were mutual and reciprocal and executed in accordance with a contract, the Supreme Court stated:

Where, as in the instant case, the wills are identical in language, witnessed by the same persons, at the same time and place, and the contracting parties are husband and wife, it is well nigh conclusive that such wills were executed in accordance with their mutual contract to dispose of their property in this manner.

*Id.* at 556 (quoting *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.*, 184 Tenn. 629, 634, 202 S.W.2d 178, 180 (1947)). *See also Estate of Fusse*, 803 S.W.2d 245 (Tenn.App.1991).

 In addition to these considerations, a party seeking to show that a testamentary disposition of property was made pursuant to a contract must do so by clear and convincing evidence. In *Junot v. Gilliam*, 759 S.W.2d 654 (Tenn.1988), a husband and wife executed mutual and reciprocal wills on February 22, 1974. The wills were written in the same language, were executed at the same time, and were witnessed by the same persons. Additionally, during their lifetime, the parties had stated that they traded wills. Other than this, there was no other evidence to support a finding that the wills were made in accordance with a mutual contract and the court held that no contract existed. The court stated:

It is well settled that in order to establish a contract to make or not to revoke a will, where the contract is not otherwise documented, evidence of such a contract must be clear and convincing. The mere fact that parties have executed mutual and reciprocal wills on the same date is not, in and of itself, sufficient to establish the existence of such a contract.

*Id.* at 657.

We conclude that the evidence is insufficient to establish that the Hurdles intended that their wills be contractually binding on the last to die. The wills contained reciprocal language, but that, standing alone, is not enough to establish contractual intent under any Tennessee precedent known to this court. The wills were bound together in the will jacket of J.T. Hurdle and found in a lock box jointly held by the Hurdles.

On the other hand, unlike joint wills which patently evidence a contractual intent, the wills in this case are mutual and reciprocal. Ruby Hurdle executed her will seventeen years after J.T. Hurdle executed his will. The wills were witnessed by different persons. There is simply no proof in the record of any circumstance that proves the parties intended their wills to be mutual contracts.

Therefore, the will of J.T. Hurdle is effective, and pursuant to the anti-lapse statute, J.T. Hurdle's estate passes to the surviving issue of Ruby Hurdle, the appellants in this case.

Reversed and remanded for proceedings consistent with this opinion. Costs assessed to the appellee.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.