IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 25, 2012 Session

IN RE ESTATE OF NANCY L. JOSEPHSON

Appeal from the Chancery Court for Marshall County
No. 15332      J. B. Cox, Chancellor

No. M2011-01792-COA-R3-CV - Filed September 11, 2012

Husband and Wife executed wills in which each relinquished the right of survivorship in the marital residence and ordered that the property be sold and that $152,000 of the sale proceeds be distributed to Wife's children. Following the death of Wife, her children brought action to compel Husband to dispose of the property in accordance with Wife's will. Husband appeals the holding that the wills he and Wife executed created a valid, enforceable contract that required him to sell their residence upon her death. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., and BEN H. CANTRELL, SP. J., joined.

Lee Bussart Bowles, Lewisburg, Tennessee, for the Appellant, Niel R. Josephson.

John R. White, Shelbyville, Tennessee, for the Appellees, Tracy Lynn Davis and Fred Thomason McMillen, IV.

**OPINION**

*BACKGROUND*

Nancy L. Josephson and Niel R. Josephson (Appellant) were married on October 16, 1993; each had children from a prior marriage. They purchased a home on Skyline Drive in Lewisburg ("the residence") in 1996; the warranty deed conveyed the property to "NIEL R. JOSEPHSON AND WIFE, NANCY MCMILLEN JOSEPHSON," with no further indication that they were to hold the property as tenants in the entirety. On December 12, 2008, the

Josephsons each executed their will. Pertinent to the issues involved in this appeal are the following provisions of each will:

Last Will and Testament of Nancy L. Josephson:

"I direct that the real estate currently owned by myself and Niel R. Josephson at 485 Skyline Drive, Lewisburg, Tennessee, be sold with the first One Hundred Fifty Two Thousand ($152,000) of the proceeds being divided equally between my two children, Tracy Lynn Davis and Fred Thomason McMillen IV. The remaining proceeds shall go to my husband, Niel R. Josephson.
. . . .
[W]e have agreed to this sale and division of the proceeds as set forth herein. We have no intention of holding this property as tenants by the entirety with right of survivorship."

Last Will and Testament of Niel R. Josephson:

"In the event my wife does not survive me, I direct the real estate currently owned by myself and Nancy L. Josephson at 485 Skyline Drive, Lewisburg, Tennessee, be disposed of as follows: I direct that the Executrix of this Will sell said real estate with the first One Hundred Fifty Two Thousand Dollars ($152,000) of proceeds to be divided equally between Nancy L. (sic) Josephson's two children . . . . Any remaining proceeds will be divided between my two children[.]
. . . .
[W]e have agreed to this sale and the division of the proceeds as set forth herein. We have no intention of holding this property as tenants by the entirety with right of survivorship."

Ms. Josephson died in July of 2009. After her death, Appellant did not attempt to sell the residence and distribute the proceeds as directed by her will. As a consequence, Tracy Lynn Davis and Fred Thomason McMillen, IV, Ms. Josephson's children who were also the co-executors of her estate (Appellees), filed suit against Appellant in Marshall County Circuit Court, requesting that Appellant be ordered to sell the residence or to pay Appellees as directed in Ms. Josephson's will. The case was transferred to the Marshall County Chancery Court, where Ms. Josephson's estate was being administered.

Trial was held on March 28 and 29, 2011. The trial court issued a Memorandum Opinion on July 21, finding, *inter alia*, that the Josephsons held the property as tenants in the

entirety, that they agreed to dispose of the property in accordance with the pertinent provision of each will, and that Appellant entered into the agreement knowingly and voluntarily and not under duress. The court held that the provision in each will that "we have agreed to the sale and disposition" of the property showed an intention to hold the property contrary to the deed and, along with the agreement as to the division of the proceeds, was sufficient consideration to establish a valid contract. The trial court further held that, while Appellant could have revoked his will during Ms. Josephson's lifetime, he failed to do so and that her death prevented Appellant from "revoking a contract not to hold the property as tenants by the entirety and further to dispose of the property in accordance with the will of the testatrix." The court ordered that the residence be sold in accordance with Ms. Josephson's will.

The issues presented by Appellant are:

Whether the trial court erred in finding the Last Wills and Testaments of Nancy and Neil Josephson created a valid, enforceable contract despite no evidence of
1)  a meeting of the minds,
2)  adequate consideration,
3)  execution without undue influence,
4)  compliance with the statutory requirements for post-nuptial agreement as set forth in Tenn. Code Ann. §36-3-501 and consistent with public policy,
5)  and in the face of the revocability of a contract to create a will, pursuant to Tenn. Code Ann. §32-3-107.

*STANDARD OF REVIEW*

We review the trial court's findings of facts *de novo*, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d). We review the trial court's determinations concerning questions of law *de novo*, with no presumption of correctness. *See Staples v. CBL Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

DISCUSSION

I.

Even though this case deals with the construction of wills, Appellant acknowledges that contract principles apply. In order for a contract to be valid, it "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon

sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Moody Realty Company, Inc. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. 2007) (citation omitted). Appellant contends that a valid contract was not formed because: (1) there was no meeting of the minds; (2) adequate consideration was not present; and (3) there was no evidence of execution of the contract without undue influence.

*A. Meeting of the Minds*

"Under general principles of contract law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms." *Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 386 (Tenn. 1996) (citation omitted). "[T]he meeting of the minds . . . [is] to be determined . . . not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances." *Huestis*, 237 S.W.2d at 675. "Courts determine mutuality of assent by assessing the parties' manifestations according to an objective standard." *Id.* at 674. Whether a meeting of the minds occurred is a question of fact. 17B C.J.S. *Contracts* § 1008 (2012).

The deposition of Barbara Medley, the attorney who drafted the wills for the Josephsons, was introduced at trial. Ms. Medley testified to the following circumstances surrounding the formation of the contract:

> Q: Now the second sentence of paragraph three [of the will] says that: *I direct that my husband, Niel R. Josephson, shall have the authority to keep all or part of said items if necessary. . . .*
> A: Right.
> Q: What does that mean?
> A: Well, when I was talking to [Ms. Josephson and Mr. Josephson] the day before this Will was executed, and we had the discussions about possibly deeding it back to [Ms. Josephson]. That led to a subsequent discussion that where Mr. Josephson said . . . that he and [Ms. Josephson] had agreed that the house was to be sold, and the proceeds divided as I set out in the will. . . . The house was to be sold and the first $152,000 would go to [Appellees], and the remaining proceeds would go to Mr. Josephson or however he designated that they go.
> * * *
> Q: [N]ow you have just gotten through describing a conversation about the house . . . and a $152,000. And then in between those you mention a Quitclaim Deed which [Mr. Josephson] would not sign?
> A: Right.

-4-

Q: Why go into such detail about the $152,000 in paragraph five if it didn't matter[?]
A: Because that is what they said they would both do.
Q: Did they sign a contract to that effect?
A: No.
Q: Did you hear them both say that it is what they intended to do?
A: Yes.
Q: Did each one of them hear the other one say that?
A: They were in each other's presence.
Q: It was a contract but not in writing.
A: It was an agreement to sell the house and split the proceeds as she designated.
* * *
Q: Did you ask Mr. Josephson to sign a Quitclaim Deed? When you asked that question were you two in the presence of Ms. Josephson?
A: Yes. I was doing it at Nancy's request.
Q: But you all three were in the same room?
A: Yes.
* * *
Q: Did [Mr. Josephson] make any reference to [Ms. Josephson's children] or any other kind of reason why he did not sign the Quitclaim Deed?
A: No. . . . He didn't really want to do that, didn't feel comfortable doing that. But [Mr. Josephson] agreed that [Ms. Josephson's children] should get the $152,000 from the sale of the house.

The only evidence cited by Appellant in support of his contention that there was not a meeting of the minds is the following excerpt from Ms Medley's deposition:

Q. If you had it to do all over again, you would look at him and say, "sign the Quitclaim deed, that guarantees, it?"
A. I mean I did tell them that was really the only guarantee. And he didn't want to sign a Quitclaim Deed.

The entirety of Ms. Medley's testimony provided evidence of a meeting of the minds between Appellant and Ms. Josephson and the requisite assent to form a valid contract; it supports the court's finding that there was a meeting of the minds in mutual assent to the terms sufficient to establish a binding contract. The testimony cited by Appellant shows only that he did not agree to execute a quitclaim deed to accomplish the objective to which the parties agreed; it does not conflict with the trial court's finding that there was a meeting of the minds relative to the disposition of the property.

*B. Undue Influence*

Whether undue influence is present is a question of fact. *Hager v. Hager*, 13 Tenn. App. 23 (Tenn. Ct. App. 1930).

In his brief, Appellant cites the following testimony of Ms. Medley relative to his undue influence contention:

> A: Yeah, December 12ᵗʰ, so I don't know what day of the week that was, but the day before is when I know I was there. And she asked me if I would come and talk to her and get this, you know, get her Will drafted[.]

He does not identify the manner in which he alleges undue influence was exercised or how the testimony of Ms. Medley is evidence of same.

This testimony is not evidence of undue influence; it states only that Ms. Medley was at the Josephsons' home the day before the wills were executed. "The doctrine of undue influence applies when one party . . . is in a position to exercise undue influence over the mind and the will of another[.]" *Brown v. Weik*, 725 S.W.2d 938, 945 (Tenn. Ct. App. 1983). The elements of undue influence are "dominion and control by the stronger over the weaker, . . . or other conditions which would tend to establish that the free agency of [one party] was destroyed and the will of [the other party] was substituted therefor." *Fritts v. Abbott*, 938 S.W.2d 420, 420-21 (Tenn. Ct. App. 1996). "The party seeking to invalidate a contract or to rescind a conveyance because of mental incapacity or undue influence has the burden of proof." *Williamson v. Upchurch*, 768 S.W.2d 265, 269 (Tenn. Ct. App. 1988) (citing *Wood v. Neely*, 66 Tenn. 586, 588–89 (1874)).

The evidence does not preponderate against the court's finding that undue influence was not present.

*C. Adequacy of Consideration*

Adequacy of consideration is question of law. *Bratton v. Bratton*, 136 S.W.3d 595, 601 (Tenn. 2004).

Appellant argues that inasmuch as he and Ms. Josephson held the property as tenants by the entirety, he would have been immediately vested with the property upon her death, and that, consequently, "the right to receive a fraction of the proceeds cannot be consideration when Mr. Josephson was already entitled to 100% of the proceeds upon Mrs. Josephson's

death." Appellant, however, misconstrues what constitutes the consideration for the contract at issue in this case.

Here, each will contained the following provision: "[W]e have agreed to this sale and division of the proceeds as set forth herein. We have no intention of holding this property as tenants by the entirety with right of survivorship." As noted by the trial court, the mutual agreement to give up the right of survivorship attendant to holding the property as tenants in the entirety altered the Josephson's ownership interests in the property; this was sufficient consideration to support the contract. *See In re Estate of Wiseman*, 889 S.W.2d 215 (Tenn. Ct. App. 1994) (holding that a mutual waiver of the statutory right to an elective share of her deceased spouse's estate, contained in a postnuptial agreement, was sufficient consideration for the agreement); *see also Rodgers v. Southern Newspapers, Inc.*, 379 S.W.2d 797, 800 (Tenn. 1964) (holding that mutual promises between the parties to a contract provide "ample consideration" for the contract).

The court properly held that there was sufficient consideration for the agreement.

II.

Appellant next contends that, if the wills "merge together to form a contract, then the contract must be considered a post nuptial contract . . . contrary to public policy and accordingly void for failure to comply with the statutory requirements." He argues that the evidence does not show compliance with the requirements of Tenn. Code Ann. § 36-3-501 that a post-nuptial agreement be entered into "freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse."

As an initial matter, we do not find Tenn. Code Ann. § 36-3-501 to be applicable to this case. The statute reads in its entirety:

> Notwithstanding any other provision of law to the contrary, except as provided in § 36-3-502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage that is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

By its terms, the statute applies to agreements relative to property "owned by either spouse before the marriage that is the subject of the agreement." The property here was purchased by the Josephsons after the marriage. Consequently, the statute does not apply.

Even if the statute were applicable, in light of our holding that the evidence does not preponderate against the trial court's findings that the agreement between Appellant and Ms. Josephson was entered into knowledgeably and without undue influence upon either spouse, this argument is without merit.

III.

Lastly, citing Tenn. Code Ann. § 32-3-107[1] and *Carol Sue Junot, et al v. The Estate of Emma Jane Gilliam, et al.*, 759 S.W.2d 654 (Tenn. 1988), Appellant contends that "[t]here has not been any evidence, clearly or convincingly, to show that a contract existed between Mr. And Mrs. Josephson that stated or illustrated any intent on the part of either party to make these wills irrevocable." Appellant does not explain in what manner revocability is at issue or the manner in which the authority cited affects the court's disposition of the case.

The trial court held that Appellant had a right to revoke his will during Ms. Josephson's lifetime but that "[h]er death should keep him from revoking a contract not to hold the property as tenants by the entirety and further to dispose of the property in accordance with the will of [Ms. Josephson]." This holding is consistent with the law. *See Rogers v. Russell*, 733 S.W.2d 79, 84 (Tenn. Ct. App. 1986) (citing T. Atkinson, *Handbook of the Law of Wills* § 49, at 224 (2d ed. 1953)); *In Re: Estate of J. T. Hurdle*, 868 S.W.2d 627, 628 (Tenn. Ct. App. 1993) (holding that the contract becomes irrevocable upon the death of one party and "the will of the first party is the will of both parties").

---

[1] Tenn. Code Ann. § 32-3-107 provides:

(a) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate can be established only by:
(1) Provisions of a will stating material provisions of the contract;
(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
(3) A writing signed by the decedent evidencing the contract.
(b) The execution of a joint will or mutual wills does not create a presumption of a contract to make a will, or to refrain from revoking a will.

As discussed above, a valid contract existed between Appellant and Ms. Josephson, as reflected in both wills; to the extent necessary, this contract was properly established in accordance with Tenn. Code Ann. § 32-3-107. Upon Ms. Josephson's passing the contract became irrevocable.

CONCLUSION

For the foregoing reasons, the judgment of the Chancery Court is AFFIRMED.


_____
RICHARD H. DINKINS, JUDGE