Alva GOODWIN, et al., Plaintiffs–
Appellants,

v.

Earl NAVE, et al., Defendants–Appellees.

Court of Appeals of Tennessee,
Eastern Section.

June 21, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 30, 1995.

William J. Cockett, Mountain City, for appellants.

H. Randolph Fallin, Mountain City, for appellees.

## OPINION

GODDARD, Presiding Judge.

This suit was initiated by Alva Goodwin, individually, and as Administrator of the Estate of his deceased wife, Ella Mae Nave Goodwin, who died intestate. It seeks to recover a portion of the estate of his wife's mother, Margaret Nave, which he contends was bequeathed to his wife under Mrs. Nave's will.

The Chancellor found that neither Mr. Goodwin nor the Estate was entitled a share of Mrs. Nave's Estate, from which determination Mr. Goodwin and the Estate appeal.

Although two issues are raised in this appeal, they present only one question: Did the Chancellor properly construe the wills of E.E. Nave and his wife Margaret Nave, which resulted in denying the estate of their daughter Ella Mae Nave Goodwin or her surviving husband Alva Goodwin, an interest in Mrs. Nave's Estate?

By agreement of the parties the case was submitted to the Chancellor without testimony, but, instead, on the pleadings, affidavits and exhibits. The facts developed are accurately and succinctly set out in the memorandum opinion prepared by the Chancellor sitting by interchange:

This action was brought by Alva Goodwin, individually, and as Executor of the Estate of Ella Mae Nave Goodwin, Alva Goodwin's deceased wife, in which he seeks to compel defendants, the Estates of E.E. Nave and Margaret Nave and their Co-executors, Earl Nave and Alex Snyder, to transfer assets to the Goodwin estate or to Alva Goodwin personally. This is a family dispute where, as is often the case, feelings run strongly. The parties have requested the Court to rule without any testimony, believing that the pleadings, affidavits and exhibits contain the necessary facts.

Alva Goodwin ("Goodwin") was the husband and sole surviving heir of Ella Mae Nave Goodwin ("Ella Mae"). Ella Mae was one of the seven children of E.E. and Margaret Nave, six of whom and the grandchild of the seventh survived them. E.E. and Margaret Nave were not favorably disposed toward their son-in-law Goodwin.

E.E. and Margaret Nave had their Last Will and Testaments prepared by the same attorney and at the same time in May 1977. E.E. Nave executed his Will on May 27, 1977. Margaret Nave executed her Will on May 31, 1977. E.E. Nave died April 18, 1986; Margaret Nave died January 8, 1991. The bulk of E.E. Nave's personal assets was comprised of several certificates of deposits (CDs) aggregating some $300,000. At the time of E.E. Nave's death, the CDs were survivorship accounts with his wife Margaret. E.E. and Margaret Nave were apparently under the impression that the CDs were the sole property of E.E. Nave. Margaret Nave had never been employed outside the home. E.E. Nave was a rural mail carrier.

E.E. Nave's Will left his wife Margaret a life estate in her husband's property and, at her death, E.E. Nave's property, after a $500 bequest not material here, was to go in seven equal shares to his six children and one granddaughter. However, the one-seventh share of Ella Mae Nave Goodwin was to be held in trust for her by co-executors Alex Snyder and Earl Nave, and, at Ella Mae's death, the remainder of her one-seventh share was to be divided equally among the remaining children and

one granddaughter. The penultimate paragraph of Art. V. reads as follows:

> It is my intention, as evidenced by the nature of my bequests herein, to leave each of my children and my granddaughter an equal share of the remainder of my estate, with an additional $500.00 to Cutie Nave Snyder. **It is further my intention to take all those steps possible to prevent the husband of my beloved daughter, Ella Mae Nave Goodwin, ... from sharing directly, or indirectly, in my estate. It is for this reason that the bequests to Ella Mae Nave Goodwin ... are structured as they are, and this Will is to be construed in a manner so as to give effect to this intent.** (Emphasis added by the Chancellor.)

Margaret Nave's will was much shorter. She likewise left her husband a life estate in her property and, at his death, the remainder was given to her six children and the one granddaughter in equal shares. In making this bequest, Margaret Nave stated:

> I make this disposition realizing that my husband, E.E. Nave, has provided an **adequate scheme of distribution for the remainder of his estate following my death, and that I have very little property of my own to pass on.** (Emphasis added by the Chancellor.)

Ella Mae Nave Goodwin died intestate November 29, 1991, some nine and a half months after Margaret Nave, leaving Alva Goodwin surviving her.

E.E. Nave, on several occasions after making his Will and prior to his death, told his son-in-law and named co-executor, Alex Snyder, to be sure that his Will was followed with respect to taking care of his daughter, Ella Mae, but to see that her husband, Goodwin, got nothing.

The crux of this lawsuit is Alva Goodwin's contention that one-seventh of any property, and more significantly the CDs that came into the estate of Margaret Nave, passed under her Will directly to his wife, Ella Mae Nave Goodwin, and thence to him as her sole surviving heir.

We begin our resolution of this appeal by first observing that the cardinal rule as to the construction of a will is to ascertain the intent of the testator. *In re Walker*, 849 S.W.2d 766 (Tenn.1993); *Daugherty v. Daugherty*, 784 S.W.2d 650 (Tenn.1990). However, a rule of equal force is that where a will is not ambiguous it is unnecessary to resort to rules of construction. *Moore v. Moore*, 204 Tenn. 108, 315 S.W.2d 526 (1958); *Davis v. Price*, 189 Tenn. 555, 226 S.W.2d 290 (1949).

It can hardly be argued that, as drawn, the will of Mrs. Nave is ambiguous. It is true that she referred to the size of her Estate as small, and it was substantially larger upon the death of her husband. This, however, does not render her will ambiguous. In this connection we note that certificates of deposit and passbook accounts composed the principal assets of Mrs. Nave's Estate. All of the certificates of deposit are dated subsequent to the execution of her will and the first entry as to the passbook accounts are likewise subsequent thereto. We recognize that it may very well be these assets were transferred from other similar accounts, which antedated her will. However, there is nothing in the record to shed light on this question.

We recognize that it certainly was not the intent of Mr. Nave that his son-in-law receive any interest in his Estate because of a perceived or real indignity suffered at his hands. However, the competent proof in the record does not disclose that Mrs. Nave harbored the same resentment. Additionally, it will be noted that she had a considerable period of time to revise her will after her husband's death and, insofar as the record shows, she suffered from no mental infirmity which would have prevented her from doing so.

The Chancellor's principal finding was that the will of Mrs. Nave incorporated the will of her husband, E.E. Nave, which resulted in denying the Estate of Mrs. Goodwin or her surviving husband, Mr. Goodwin, an interest in Mrs. Nave's Estate.

The only Tennessee case that has been cited to us or that we have found touching on

the subject of incorporation of a separate document in a will is *Howell v. Moore*, 14 Tenn.App. 594 (1930),[1] a will contest certified from the probate court to the circuit court to be tried on the issue of *devisavit vel non.*

This case recognizes the general rule that other instruments may be incorporated in a will provided certain specifications are met.

It cites numerous authorities and quotes with approval from *Jarman on Wills*, as follows:

In 1 Jarman on Wills (6 Ed.), p. 132, it is said:

"But whatever be the precise nature of the document referred to, it must be clearly identified as the instrument to which the will points. Two things are necessary: First, that the will should refer to some document as then in existence; secondly, proof that the document propounded for probate was, in fact, written before the will was made, and was identical with that referred to in the will."

This authority might be helpful to this Court if in fact the case at bar were in a posture to accommodate the question. We conclude it is not because Mr. Nave's will was not probated as a part of Mrs. Nave's will, which was the procedure attempted in *Howell.*

The other reason advanced by the Chancellor for his action was that Mr. and Mrs. Nave's wills were mutual wills. In all deference to the Chancellor, we cannot agree. Am.Jur.2d, with appropriate citations, defines mutual wills as follows:

"Mutual" wills have been defined as wills executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner.

*Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 636, 202 S.W.2d 178, 180 (1947), recognizes the general rule that mutual wills are those made pursuant to an agreement between the parties, and that

Where ... the wills are identical in language, witnessed by the same persons, at the same time and place, and the contracting parties are husband and wife, it is well nigh conclusive [2] that such wills were executed in accordance with their mutual contract to dispose of their property in this manner.

It is clear that the wills in question do not meet the requirements of mutual wills and the Chancellor may not be sustained on that ground.

For the foregoing reasons the judgment of the Chancellor is reversed and the cause remanded for a determination of the amount of Mrs. Nave's Estate that would go to the estate of her daughter, Mrs. Goodwin. The costs below, as well as costs of appeal, are adjudged against the Defendants.

FRANKS and SUSANO, JJ., concur.

---

1. A complicating feature in *Howell* was that the will of the testator was holographic, but the instrument sought to be incorporated, being the will of his mother, was, of course, not in his handwriting.

2. A subsequent Act of the Legislature, now codified as 32–3–107(b), in effect overruled the "conclusive" suggestion of the Court:

**32–3–107. Contracts to make or revoke wills.—**

. . . .

(b) The execution of a joint will or mutual wills does not create a presumption of a contract to make a will, or to refrain from revoking a will.